## STRONG *v.* UNITED STATES.

*(District Court, S. D. Alabama.* February 21, 1888.)

1. UNITED STATES COMMISSIONERS—FEES—COMPLAINT—OATH—FILING COMPLAINT.

Under Rev. St. U. S. §§ 828, 847, 1014, a commissioner of the United States circuit court in Alabama is entitled to a fee for administering the oath to every criminal complaint made before him, and for filing the same, but not for drawing the complaint.

2. SAME—REDUCING TESTIMONY TO WRITING.

The Alabama statute requires a committing magistrate to reduce to writing the testimony of witnesses examined before him on preliminary examination, but the examination is not illegal by his failure so to do, and the testimony may be proved by any witness who heard it. An examination before a United States commissioner, so reduced to writing by him, is not a deposition under Rev. St. U. S. § 847, which prescribes a fee for taking and certifying depositions to file, and the commissioner is not entitled to a fee for such services.

3. SAME—WARRANTS AND SUBPŒNAS—FILING RETURN.

A commissioner is entitled, under Rev. St. U. S. § 847, to a fee for issuing a warrant and subpœna and filing the same when returned, but not for entering the return.

4. SAME—BAIL-BONDS—ACKNOWLEDGMENT.

Under Rev. St. U. S. §§ 828, 847, a commissioner may charge 15 cents a folio for drawing a bail-bond, but is not entitled to a fee for taking an acknowledgment to the bond, the acknowledgment being unauthorized by statute.

5. SAME—OATHS TO WITNESS FEES—CERTIFICATES OF ATTENDANCE.

Rev. St. U. S. §§ 828, 854, authorize a commissioner to charge a fee for administering the oath to each witness as to his mileage and attendance, and he is entitled to 15 cents a folio for every certificate given a witness and on which he is paid.

6. SAME—DOCKET FEES.

Rev. St. U. S. §§ 828, 847, authorizing a commissioner to receive docket fees, was repealed by the act of congress of August 4, 1886, (24 U. S. St. at Large, 256, 274,) entitled "An act making appropriations to supply deficiencies, * * * and for other purposes," where, in a proviso, it is expressly declared that commissioners shall not be entitled to any docket fees.

7. SAME—TRANSCRIPTS TO CIRCUIT CLERK.

Under an order of the circuit court, requiring commissioners to forward to the clerk of the United States circuit court a certified copy of the proceedings in every case on their docket, and to make out and forward to the clerk, at the end of each month, a report in duplicate of all cases instituted before him during the month, a commissioner is entitled to 10 cents a folio for the copy, and 15 cents a folio for the certificate attached, and for one report made in duplicate 15 cents a folio, and 15 cents for the certificate attached.

At Law. Original action for services.

The plaintiff, William H. Strong, who is a commissioner of the United States circuit court, brought this suit to recover a balance claimed to be due him on an account for services rendered as such commissioner for and on behalf of the United States. The original account, as presented

to the proper accounting officer of the treasury department, was for $919.10, and runs from February 18, 1887, to June 7, 1887. On this account there was allowed and paid by such officer the sum of $296.25. The balance claimed to be due was $622.85.

*Geo. H. Patrick*, for plaintiff.

*J. D. Burnett*, U. S. Dist. Atty., for defendant.

TOULMIN, J., (*after stating the facts as above.*) This is a suit brought under the recent act of congress, approved March 3, 1887, (24 U. S. St. at Large, 505.) The plaintiff is a commissioner of the circuit court of the United States for the Southern district of Alabama, and claims that the amount sued for is a balance due him for services rendered by him as commissioner for and on behalf of the United States. The account sued on is itemized, and is fully set out in the petition. It was verified by oath, and duly presented to and approved by the circuit court of the United States for the Southern district of Alabama, and was transmitted to the first comptroller of the treasury department. A partial payment was made on the account, but a large portion of it was disallowed by the comptroller; and this suit is brought to recover the balance, the payment made being admitted as a credit on the account. To the petition or complaint the district attorney interposes the plea of general issue,— a general denial of the allegations of the complaint. The issue as presented brings before the court the entire account as set out in the petition, and makes it incumbent on the plaintiff to show to the satisfaction of the court that the services therein charged for were actually rendered as stated, and that the charges therefor are according to law. The evidence submitted by the plaintiff in support of his claim consists of his sworn statement in court, the papers in the several cases specifically numbered and mentioned in the petition, the account set out in the petition, and the order of the circuit court allowing the same.

The first question to be considered is whether all the services charged for were actually rendered, and, secondly, whether all the fees claimed in the account are authorized by law. The law of costs must be deemed and held a penal law, and no fee must be taken except in cases expressly provided by law. 1 Brick. Dig. 417, § 6; *Day* v. *Woodworth,* 13 How. 363. Officers who are entitled to receive fees for their services can receive only such fees as are specifically prescribed by law. Rev. St. §§ 823, 1764, 1765; *Railroad Co.* v. *Railway Co.,* 81 Ala. 94–96, 1 South. Rep. 214. The statutes of the United States prescribe the services for which commissioners are entitled to receive fees, and prescribe the fees that shall be charged. See Rev. St. §§ 828, 847. Unless we find in the statutes authority for the fees charged in the account sued on, they cannot be allowed. *Jerman* v. *Stewart,* 12 Fed. Fep. 271, 275. The first item found in the account, and which is charged in every case mentioned in it, (except the first five,) is for a complaint. The usual mode of proceeding before a magistrate or justice of the peace in a criminal prosecution in this state is by a complaint in writing made by the person who institutes the prosecution, which is sworn to and filed with the magistrate.

Hence the proceeding by complaint before commissioners. But I find no fee allowed for a complaint by either of the sections of the statutes referred to. There is none provided for in terms in section 847, which prescribes commissioner's fees; and there is no like service performed by clerks of the United States courts, and for which they receive compensation. Such clerks have no authority to receive complaints of this character, or in any manner to institute or to take cognizance of criminal prosecutions. My opinion is that the petitioner is not entitled to a fee for the complaint in any case. But the complaint is sworn to before the commissioner, and is filed by him, and the statute provides a fee for him for administering an oath, and for filing every paper in a cause. I therefore hold that the petitioner, while not entitled to a fee for the complaint, is entitled to a fee for administering the oath to every complaint made before him, and for filing the same. But it is urged in argument that if there is no fee allowed for the complaint *eo nomine*, the commissioner is required to examine the complainant, and to reduce his testimony to writing, and that this then becomes a deposition, for which the commissioner is entitled to be paid at the rate of 20 cents a folio, under section 847, Rev. St. In the first place, it will be noted that the petitioner does not claim in his account or in his petition any compensation for taking depositions. It is apparent, then, that the claim now set up for this compensation is an after-thought. However, if I should agree with counsel in the suggestion that the petitioner was entitled to compensation for taking depositions in these criminal proceedings, I would allow an amendment of the petition to cover this claim.

Section 1014, Rev. St., in conferring criminal jurisdiction upon commissioners, declares that proceedings before them shall be agreeable "to the usual mode of process" in the state where they are appointed. In this state it is the duty of a committing magistrate to reduce to writing the testimony of witnesses examined before him on preliminary examination, but if he neglect the duty, the examination is nevertheless legal and valid, and the testimony given may be proved by any witness who heard and remembers it substantially. *Harris* v. *State*, 73 Ala. 495. The examination reduced to writing by the commissioners is not a deposition in contemplation of section 847, Rev. St., which prescribes a fee for taking and certifying depositions to file. A deposition is the testimony of a witness, reduced to writing, and signed as given under oath before a commissioner, examiner, or other judicial officer, in answer to interrogatories and cross-interrogatories, to be filed and read as evidence on the trial of a case pending in court. Burrill, Law Dict.; 1 Bouv. Law Dict. 408; *Couch* v. *State*, 63 Ala. 163. Rev. St. §§ 863, 866, 867, provide for the taking of depositions, and name, among other officers, commissioners and clerks of the courts, as authorized to take and certify them to file in court. And sections 828 and 847 prescribe the compensation for this service. But in *Iron Factory* v. *Corning*, 7 Blatchf. 16, in 1869, it was held by Mr. Justice NELSON that the word "deposition," in the act of 1853, did not include oral testimony taken in court or before a master, and applied only to a deposition given in evidence on the trial of a case

at common law, and to one read at the hearing of a suit in equity. The act of 1853 referred to is chapter 16 (relating to fees) in the Revised Statutes, pages 153 to 161, and in which chapter are found sections 828 and 847, which prescribe the fees of commissioners and clerks for taking and certifying depositions. I am satisfied that petitioner is not entitled in this suit to any fees for taking depositions.

The next fee charged in every case mentioned in the petition, and for which there is no authority, is for entering return of warrant. The petitioner is not entitled to this fee. There is no statute which authorizes it. Section 847 does not provide for it. He has no record on which to enter such return, and the proof shows, as a matter of fact, that he did not enter it. But he is entitled to a fee for issuing warrants, and for filing the same when returned. What I have said in regard to the fee charged for entering return of warrant applies equally to the charge for entering return of subpœnas. The petitioner is, however, entitled to a fee for issuing a subpœna, and for filing the same when duly returned. It will be observed that in some cases I have not allowed him a fee for filing subpœnas. This disallowance has only been in cases where there was no return.

The statute authorizes a charge for drawing a bond at 15 cents a folio. Rev. St. §§ 847, 828. On inspection of the bonds submitted in this case I find they contain four folios. I think petitioner should be allowed 15 cents a folio for drawing bonds as charged. But the charge for acknowledgment of bonds is unauthorized by law, and, as the proof shows, by practice. Section 847, Rev. St., provides for a fee for taking acknowledgments. I am of opinion that this acknowledgment has no reference to a bail-bond. There is no such thing as an acknowledgment to a bond. A commissioner is authorized to take bail; that is, to take security for the appearance of a party in court,—see Rev. St. § 1014; Code Ala. (1886,) §§ 4406, 4407,—the form of which is simply an acknowledgment or admission by the accused and his sureties of indebtedness to the United States in the sum prescribed, or an agreement to pay to the United States the sum prescribed, unless the accused appear at the proper court, from term to term, or at a particular term, to answer the particular charge preferred against him. This is signed, sealed, and delivered to the officer taking the bail, and, if approved, the accused is released from custody. 1 Brick. Dig. 203, § 71. There is no oath required, or further acknowledgment required or, as a matter of fact, taken. A bond duly signed, with sureties, and with a condition for the appearance of the principal in a criminal case before a court, accepted by a person authorized to take bail, is good as a recognizance. In the case of a formal recognizance the obligation is acknowledged by the parties present in open court, and entered of record. 2 Bouv. Law. Dict. 828. But in the case of a bond in the nature of a recognizance, where the parties sign their names, there is no absolute necessity for the principal being present before the person authorized to accept such bond. In the absence of the principal, the magistrate might refuse to accept the bond, but if he is satisfied that it was duly signed and sealed, and the sureties are sufficient,

and he accepts the bond, it is valid. *U. S.* v. *Ebbs*, 10 Fed. Rep. 371; *Ozeley* v. *State*, 59 Ala. 94. When bail is taken by commissioners it should be by bond, where the principal and sureties sign their names, as courts of commissioners are not courts of record, authorized to take acknowledgment of recognizances for future appearance before them or some court. Courts of justices of the peace are not courts of record, authorized to take acknowledgment of recognizances for future appearance before them. *U. S.* v. *Harden*, 10 Fed. Rep. 805. And, as was said by the court in that case: "The powers and duties of the United States commissioners in criminal matters are not as extensive as those of justices of the peace, but are confined to those which they must necessarily exercise as examining and committing magistrates in enforcing the criminal laws of the United States, and within this limit of jurisdiction they must conform as near as may be to the forms and mode of procedure required by law of justices of the peace." The commissioner holds no court; he acts as an arresting, examining, and committing magistrate. *Ex parte Perkins*, 29 Fed. Rep. 909; *U. S.* v. *Case*, 8 Blatchf. 250; *U. S.* v. *Martin*, 17 Fed. Rep. 150; *U. S.* v. *Ambrose*, 7 Fed. Rep. 554. For form of bail not in open court, see Code Ala. (1886) § 4420. It is required to be in writing, signed by the defendant and at least two sufficient sureties, and approved by the magistrate or officer taking the same; and this is all that is required.

Under the statute of this state a sheriff has authority, and it is his duty, to discharge on bail persons charged by indictment with criminal offenses. In the case of a misdemeanor, no order of a judge or court is necessary, but the sheriff fixes the amount of bail, and it is his duty to discharge the accused on sufficient bail being given. In the case of a felony, the court makes an order fixing the amount of bail required, and the sheriff has authority, and it is his duty, to discharge the defendant on his giving bail as required by such order; and a sheriff may discharge an accused on his giving sufficient bail when arrested on a warrant issued by a magistrate. See Code Ala. (1886,) §§ 4275, 4291, 4408, 4409; *Hammons* v. *State*, 59 Ala. 164; *Ozeley* v. *State*, Id. 94. A sheriff has no authority to take an acknowledgment. If, then, an acknowledgment is essential to bail, how is it that a sheriff can take bail without such acknowledgment? The acknowledgment, for the taking of which a fee is prescribed, is an act having reference to conveyancing. It is the act of the grantor in going before a competent officer and declaring the instrument to be his act and deed. The officer before whom this declaration is made is considered as taking the acknowledgment, and his certificate on the instrument that such a declaration has been made to him is also called an acknowledgment. 1 Bouv. Law. Dict. p. 50; Worcest. Dict.; Webst. Dict. Nothing of this kind is done or required to be done in taking bail. But there are certain instruments required to be acknowledged to entitle them to be recorded, and such instruments, to be valid in certain cases, must be recorded. Rev. St. §§ 4192, 4193. Commissioners of the circuit court are authorized to take such acknowledgments. Rev. St. § 1778. And for taking acknowledgments they are entitled to receive a fee. Rev. St. § 847.

I think the charge for pay-roll of witnesses excessive in most of the cases in which it is made. The petitioner is entitled to a fee for administering the oath to each witness as to his mileage and attendance, and is entitled to 15 cents a folio for every order or certificate given the witness, and on which he is paid. This is what the petitioner calls a "pay-roll." I find that in most of the cases in which the fee for pay-roll is charged there was but one witness, and I further find that the certificate contains less than 150 words. Rev. St. §§ 828, 854.

In the case of *U. S.* v. *Wallace*, 116 U. S. 398, 6 Sup. Ct. Rep. 408, it was held that commissioners were entitled to docket fees under the provisions of Rev. St. §§ 828, 847. This decision was rendered on January 18, 1886. But by act of congress of August 4, 1886, it is provided that they shall not be entitled to any docket fees. The docket fees claimed in this case accrued in the year 1887, from February to June, inclusive. The contention of the petitioner is, in substance, that the provision referred to is found in the appropriation bill of August 4, 1886, in the proviso to the clause excepting docket fees, and that it excepts them only from the sum there appropriated for payment of commissioners; and, further, that inasmuch as congress did not continue the exception in the appropriation bill for the fiscal year 1887, the proviso has no effect on the claim here made. In other words, that payment of docket fees to commissioners was simply suspended temporarily by act of August 4, 1886; and the case of *U. S.* v. *Langston*, 118 U. S. 389, 6 Sup. Ct. Rep. 1185, is cited in support of this proposition. This case is clearly distinguishable from *U. S.* v. *Langston*, as I understand it. That case was where the claimant, Langston, brought suit to recover an unpaid balance of salary claimed to be due him as minister to Hayti. It appears that on the creation of the office of minister to Hayti congress fixed the salary of that officer at $7,500 a year, and from that time until the year 1883 made an annual appropriation of that sum for the salary. By act of July 1, 1882, there was appropriated by congress for the fiscal year ending June 30, 1883, only $5,000 to pay the salary of the minister to Hayti, and the same appropriation was made for each of the years ending June 30, 1884, and June 30, 1885. The suit was brought in the spring of 1886, to recover the difference between $7,500 a year and $5,000 a year, for the period from June 30, 1882, to July, 1885. The defense was that congress, by appropriating a lesser sum, had indicated its purpose to reduce the salary. The court held that the statute which fixed the annual salary at $7,500, without limitation as to time, was not abrogated or suspended by subsequent enactments appropriating a less amount for the salary for a particular year, the same containing no words which expressly or impliedly modified or repealed it. Congress did not say that said minister should receive no more than $5,000 a year for his salary. The converse of the proposition laid down in *U. S.* v. *Langston, supra,* must then be true: that a statute fixing the salary of an officer must be deemed abrogated by a subsequent enactment appropriating money to pay for the services of that officer, and containing words which, by clear implication, repeal the previous law. Now, does the act of August

4, 1886, repeal the earlier statutes under which docket fees were allowed to commissioners? See 24 U. S. St. at Large, 256, 274. The title of the act of August 4, 1886, is "An act making appropriations to supply deficiencies in the appropriations for the fiscal year ending June 30, 1886, and for prior years, and for other purposes," showing that the purpose of the act was not only to make appropriations to supply deficiencies in the appropriations for the fiscal year ending June 30, 1886, but that there were other objects in view. One of these objects is clearly shown upon the face of the act, where it is expressly declared that commissioners shall be entitled to receive fees for certain services therein specified, but they shall not be entitled to any docket fees. The language is "that for issuing any warrant or writ, and for any other necessary service, commissioners may be paid the same compensation as is allowed to clerks for like services, but they shall not be entitled to any docket fees." If the intention of congress was simply that docket fees were to be excepted from the sum appropriated in that act for the payment of commissioners, then why was any reference made to their compensation for issuing warrants, writs, etc.? Why did not congress simply say, "provided that no part of this appropriation shall be applied to the payment of docket fees?" Under the construction contended for, the only effect to be given the clause under consideration is retrospective, and that it should apply only in those cases where the commissioners had not been paid, or would not be paid, their fees for services rendered during the year ending June 30, 1886, out of the regular appropriations for that year. The clause under consideration is found in a proviso in the deficiency appropriation bill for 1886. But for the fact that the clause declaring that commissioners shall not be entitled to any docket fees comes under a proviso, there would be no difficulty at all in determining what the intention of congress was. As a general rule, a proviso is intended to restrain the enacting clause, and to except something which would otherwise have been within it. But I look on this proviso as a legislative construction of the law,—as a legislative declaration by congress that commissioners shall not be entitled to docket fees, notwithstanding the decision of the supreme court. Congress having spoken on the subject, it is the duty of the courts to give effect to its words.

What reason could congress have for declaring, in effect, that although commissioners had theretofore been entitled to docket fees, and although they shall be entitled to them hereafter, yet they shall not be entitled to have them paid out of this small appropriation? Such, however, is the contention. How unreasonable and unjust would such a construction of the statute make the action of congress. Is it not more reasonable and just to hold that congress intended to make the law applicable to, and to operate prospectively on, all commissioners alike,—to put them all on the same footing, by cutting off all docket fees from that time?

It may be that the statute under consideration is framed in an inartificial manner,—that there is want of perspicuity or precision in it. When this is the case, courts are often required to look less at the letter or words of the statute than at the reason and spirit of the law in endeavoring to

arrive at the will of the law-maker. It is well known that there had been much controversy over the claim set up by commissioners to docket fees; they contending for them, and the comptroller of the treasury denying their right to them. At last the matter was brought into the courts, and the supreme court decided that commissioners were entitled to such fees. In a few months thereafter congress passed the act of August 4, 1886, in which it makes a deficiency appropriation to pay commissioners' fees, and for other purposes, and in which act it takes occasion to say that commissioners shall not be entitled to any docket fees. Is there any other conclusion than that the reason and spirit of that act was to meet the decision of the supreme court, and to finally settle by a legislative declaration the question in controversy? Again, it is contended that inasmuch as congress did not continue the proviso,—or exception, as it is called,—in the appropriation bill for the year ending June 30, 1887, the act of August 4, 1886, had the effect only to suspend section 828 temporarily. It seems to me the fact that the provision denying the payment of docket fees to commissioners was omitted from the appropriation bill for the year ending June 30, 1887, is a very strong argument to show that the intention of congress was to abrogate the statute allowing such fees by adopting the provision on that subject to be found in the act of August 4, 1886, which we have been considering. And this argument is strengthened by the fact that both acts were passed on the same day, August 4, 1886. See 24 St. at Large, 222,256. Docket fees having been abolished by one act passed on that day, there was no reason for another act to the same effect, on the same day. I cannot adopt the view contended for by the petitioner unless I eliminate from the act the words, "they shall not be entitled to any docket fees," which congress has inserted. My duty is to give them effect. Not only do these words, in the light of the circumstances under which they were used, make the intention of congress manifest, but that intention is plainly repugnant to the former statutes,—sections 828, 847,—as construed by the supreme court. My opinion, therefore, is that the later statute repealed the earlier, although there are no express words of repeal employed in it; and I am constrained to hold that the petitioner is not entitled to recover any docket fees in this suit. *U. S.* v. *Fisher*, 109 U. S. 143, 3 Sup. Ct. Rep. 154; *U. S.* v. *Mitchell*, 109 U. S. 146, 3 Sup. Ct. Rep. 151.

Since the trial in this case the charge for docket entries has been abandoned and withdrawn.

By an order of the circuit court in this district commissioners are required to forward to the clerk of the United States circuit court a transcript or certified copy of the proceedings in every case on their docket. For this copy I think they are entitled to be paid at the rate of 10 cents a folio, and for the certificate to it 15 cents a folio. I find that such copy averages two folios, and that the charge made by the petitioner for the certificate is correct. Rev. St. §§ 828, 847. The same order of the circuit court requires a commissioner to make out and forward to the clerk of the court, at the end of each month, a report in duplicate of all cases instituted or examined during the month. The petitioner has

charged a fee for a monthly report in each case. This is not correct. He is not required to make a separate monthly report in each case, but he is required to make, at the end of each month, one report of all cases had during the particular month. For this report made in duplicate he is entitled to 15 cents a folio, and for the certificate attached thereto 15 cents.

In conclusion I find that the fees to which petitioner is entitled on the account sued on amount in the aggregate to $477.25. But he admits having been paid on this account the sum of $296.25. Judgment will therefore be entered in his favor for the sum of $181, being the balance found to be due on the account.

I have carefully and critically examined the account and the papers therewith submitted in evidence in this cause, and, after mature consideration, have prepared an opinion of unusual length. I could hardly have done less and covered all the points presented in the cause, which I desired to do because of their importance to the United States, to the petitioner, and to all others of like interest with the petitioner.