STATE ex rel. DAVIS v̇. CUTLER et al.

No. 1927.   Decided May 28, 1908 (95 Pac. 1071).

1. COURTS—ESTABLISHMENT—STENOGRAPHERS—EMPLOYMENT. — Under Comp. Laws 1907, sections 721, 722, authorizing the judges of the district court to contract with and employ competent persons as court stenographers at a rate not to exceed $8 for each sitting of court, and that such stenographers shall be paid not to exceed ten cents a mile for each mile actually traveled in the performance of their part of the contract, a district judge has power to contract to pay a stenographer for mileage at the rate of ten cents a mile without reference to amount actually paid for such travel.

2. SAME—STATUTES.—Laws 1907, p. 172, c. 123, making appropriations for payment of *per diem* mileage of court stenographers, and limiting reimbursement for mileage to the amount actually paid out, was not intended to apply to contracts for the payment of stenographers' mileage at the rate of ten cents per mile executed by judges of the district court, as authorized by Comp. Laws 1907, sections 721, 722.

3. STATUTES—AMENDMENT—TITLE.—Though a general appropriation bill is exempted from the general constitutional provision requiring all bills to contain but one subject, which must be clearly expressed in the title, a general law may not be amended, modified, or repealed by a general appropriation act contain-

ing a general title without complying with the constitutional provision providing that the section amended or modified be re-enacted in the form as modified or amended, and not by mere reference, etc.[1]

4. COURTS—STENOGRAPHERS—COMPENSATION — STATUTES — IMPLIED REPEAL.—Laws 1907, p. 172, c. 123, making appropriations for general purposes, and limiting appropriations for the payment of mileage for court stenographers to the amount actually expended, did not modify or repeal by implication Comp. Laws 1907, sections 721, 722, authorizinig district judges to contract with stenographers for the payment of mileage at a rate of ten cents a mile.

5. MANDAMUS — ACTS TO BE PERFORMED — JUDICIAL ACTS — STATE BOARD — CLAIMS — EXAMINATION — DISCRETION. — While the state board of examiners in the consideration of claims against the state acts in a quasi judicial capacity, and may exercise discretion in the discharge of its official duties, it may not arbitrarily refuse to allow a claim involving questions of law only, and, if it does so, the claimant may maintain mandamus to compel the allowance of the claim.[2]

6. SAME—SUPREME COURT—ORIGINAL JURISDICTION—MANDAMUS.— The power of the Supreme Court to issue mandamus is not limited to appellate proceedings, but extends to the enforcement of official action by the state board of examiners.[3]

Original application in the Supreme Court for *mandamus* by the State, on relation of Justin R. Davis, petitioner, against John C. Cutler and others, constituting the State board of examiners.

JUDGMENT FOR PETITIONER.

*Thurman, Wedgwood & Irvine* for petitioner.

*M. A. Breeden,* Atty. Gen., and *A. R. Barnes,* Asst. Atty. Gen., for respondents.

FRICK, J.
This is an original proceeding commenced in this court by the relator as court stenographer for Hon. C. W. Morse,

---

[1] Mill v. Brown, 31 Utah 473, 88 Pac. 609, Marioneaux v. Cutler 32 Utah 475, 91 Pac. 355.
[2] Thoreson v. State Board of Examiners, 19 Utah 18, 57 Pac. 175.
[3] State v. Morse, 31 Utah 213, 87 Pac. 705.

one of the judges of the district court of the Third judicial district of this state, against the respondents, constituting the state board of examiners of the state of Utah. The same matters involved in this proceeding were before this court in the case entitled *State v. Edwards,* 93 Pac. 720, where we held that, in view of certain constitutional provisions, the claim in question is one which ought to be presented for allowance to the state board of examiners. It now appears from the pleadings that the claim has been so presented to and has been disallowed by said board of examiners, and the relator has therefore instituted this proceeding to compel said board to audit and allow the claim in question.

The claim of the relator arises under a legislative act passed in 1899 (Laws 1899, p. 112, c. 72), which act has been carried into the compiled Laws of Utah of 1907, constituting sections 721 to 728xl, inclusive, of that compilation, and which compilation will hereafter be referred to instead of the original act. By sections 721 and 722 among other things it is in substance provided that the judges of the district courts of this state may contract with and employ competent persons as court stenographers to report the proceedings of such courts; that said contracts shall provide that such stenographers shall attend each sitting of the court and make full stenographic notes of the testimony and proceedings, which notes shall be filed with the clerk of the court; that such contracts shall provide the rate of compensation to be paid to the stenographers, which shall not exceed the sum of $8 for "each sitting of the court;" that "such contract shall further provide that the said stenographer shall hold his employment at the pleasure of the judge of the court appointing him, or his successor, and may also provide that said stenographer shall be paid not to exceed ten cents per mile for each mile actually traveled by him in the performance of his part of said contract, and the amount of such mileage shall be certified by the court to the State Auditor, who shall draw his warrant upon the State Treasurer for the amount to

certified, and the same shall be paid out of the state treasury." Under the provisions aforesaid the relator instituted proceedings asking for a writ of mandate to compel the State Auditor to draw a warrant for the mileage certified to by the judge, as appears from the case of *State v. Edwards,* supra. The writ was denied in that case for the reasons there stated. Since that decision the relator has presented the claim for allowance to respondents, constituting the state board of examiners, and that board has rejected his claim upon the ground, as we understand it, that the judge did not certify that the amount of the claim for mileage, to wit, ten cents per mile, was actually paid by the stenographer, and that the stenographer did not claim that the amount was actually paid by him in traveling from place to place while engaged in the performance of official duties under the contract.

It is admitted by respondents that the relator is a duly appointed court stenographer; that he entered into a contract with the district judge aforesaid as provided in the sections above referred to; that the number of miles as claimed by him were actually traveled in the discharge of official duties in pursuance of said contract; that the contract provides for mileage at the rate of ten cents per mile; and that the certificate of the judge is regular upon its face. Indeed there is no dispute with regard to any matter of fact, but the board justify their action in disallowing the claim entirely upon questions of law, viz.: (1) That the judge did not have the authority to contract for mileage in excess of the amount actually paid, and in no event to exceed ten cents per mile; and (2) that in the general appropriation bill of 1907 the Legislature limited the payment of mileage to be paid to court stenographers to the amount actually paid out by them. In view of this, it is asserted by respondents that, since it is not made to appear that the mileage claimed by the relator was actually paid by him, he therefore does not state sufficient facts to entitle him to the relief prayed for notwithstanding the admitted facts. Upon the oral argument the deputy attorney

general did not seriously contend that the judge did not
have the authority, under the provisions of the section
above quoted, to contract for and allow mileage to the ex-
tent of ten cents per mile.    Indeed the language of the
statute is so plain upon that point that it requires no con-
struction.    We, therefore, need not dwell upon the rea-
sons why the Legislature permitted the judge and stenogra-
·pher to agree upon the rate of mileage within the limits
fixed in the statute.    It being admitted that the claim of
the relator is for mileage actually traveled in pursuance of
a contract duly entered into in January, 1905, and that
the amount claimed is within the rate allowed by the law
in pursuance of which the contract was entered into and
under which it was in force at the time the mileage was
earned, there seems no escape from the conclusion that the
contention of the respondents that the facts stated upon
this ground are insufficient should be overruled.

The respondents, however, contend that the relator can-
not recover the amount claimed by him because the Legis-
lature, in the general appropriation act of 1907 (Laws
1907, p. 172, c. 123), limited the mileage to be paid to
the amount actually paid by the stenographer; that the re-
lator does not allege that the amount claimed by him was
actually paid for that purpose; and that therefore the al-
legations are insufficient to entitle him to recover.    It is
true that under the general title of ''an act making ap-
propriations for general purposes'' the Legislature, in mak-
ing the usual appropriation for the two following years
for mileage and *per diem* for court stenographers, limited
the payment for mileage to the amount actually paid.    It
seems clear to us, however, that it was not the intention of
the Legislature to have this limitation apply to contracts
in force under the section above referred to.    It would·be
unreasonable to assume that the Legislature intended to
amend or modify that section in the brief statement con-
tained in the general appropriation act of 1907.    But, if we
assume that it was the intention to do this, did the Legis-
lature have the power to amend, modify, or repeal a gen-

eral law by merely inserting a conflicting clause or phrase into the general appropriation act? While under the Constitution general appropriation bills are exempted from the general constitutional provision which requires that all bills must contain but one subject, which must be clearly expressed in the title, it does not follow that general laws may be amended, modified, or repealed by a general appropriation act under such a general title. The Legislature had the undoubted right to amend, modify, or repeal the section in question in any respect and at any time. But in order to do this the Legislature would have to comply with the constitutional provision relative to the amendments or modifications of existing laws. If it was intended to directly modify or amend a particular chapter or section, the Constitution required that the chapter or section amended or modified be re-enacted in the form as modified or amended, and not by mere reference to the law intended to be modified or amended. It is true that we held in *Mill v. Brown,* 31 Utah, 473, 88 Pac. 609, and in *Marioneaux v. Cutler,* 32 Utah 475, 91 Pac. 355, in harmony with the great weight of authority, that this constitutional provision does not apply to independent acts, and, further, when there is an irreconcilable conflict between a later and a prior law, that the later one repeals the former by implication. These rulings are, however, based upon the ground that the independent acts otherwise conform to the constitutional requirements with regard to both form and substance. We are not prepared to go to the extent of holding that a substantive law may be either amended or modified, nor may it be repealed by implication by a general appropriation act under a general title such as permitted in such acts. If this may be done, we know of no law fixing legislative salaries or official compensation of any kind that may not be amended or repealed by a general appropriation act. The committee having such a bill in charge might, in connection with each item of appropriation, add any provision which would amend or by implication repeal any existing law so that it would be almost impossible for any officer to know the state of the law

with regard to the compensation of legislative offices. Moreover the members of the Legislature not of the particular committee might thus be entrapped into voting upon any number of subjects entirely foreign to mere appropriations of money without intending to do so. If it were the intention of the Legislature to amend the section in question, they were required to do this by a special amendatory act which conformed to the constitutional requirement, or by an independent act covering the subject-matter of stenographers' mileage. If the provisions of such an independent act were in irreconcilable conflict with the former law upon the subject, although the latter did not in terms repeal the former, it would still amount to a repeal of the former by unavoidable implication. But the general appropriation act of 1907 was not intended to be an independent act upon the subject of the appointment of court stenographers, nor upon the question of fixing or limiting their compensation. The Legislature had the undoubted right to limit in amount any general or special appropriation, or refuse to make any at all; but it could not reduce nor increase the compensation otherwise fixed by the law or by a contract authorized by law in a general appropriation act.

The respondents have cited several cases which are claimed to support their contention. The case of *Collins v. State*, 3 S. D. 18, 51 N. W. 776, is especially relied on. That case is, however, clearly distinguishable from the one at bar. In that case the officer whose salary was in question was holding under a territorial appointment and under a law which provided that the term of all officers appointed by the territorial Governor should terminate in ten days after the term of the Governor making the appointment expired. When the territory of Dakota was divided into two equal parts, the south half was created into the state of South Dakota. The officer in question held his office under an appointment calling for his duties to be performed within the entire territory, and when the territorial Governor ceased to hold office in South Dakota the officer in question still continued to

discharge the duty of veterinary surgeon within the new
state of South Dakota. The newly adopted Constitution
of South Dakota contained a special provision as follows:
"No warrant shall be drawn upon the State Treasurer ex-
cept in pursuance of an appropriation for the specific pur-
pose first made." The first Legislature of the new state of
South Dakota made a specific appropriation for the salary
and expense of this veterinary surgeon of about one-half of
what he had received under the territorial appointment. He
sued for the difference, and the court held that under the
constitutional provision above quoted no warrant was
authorized for an amount greater than the amount specially
fixed by the Legislature for that purpose. It was further
held that under the particular facts and circumstances of
that case the officer had no cause of action against the state
of South Dakota. The other cases cited are from the Su-
preme Court of the United States in which it is held that,
where Congress fixed the amount to be paid for official
compensation or salaries in an appropriation act, although
the appropriation may be less than the amount fixed in an-
other statute, if the appropriation specially states the amount
appropriated to be in full for all compensation, the appro-
priation repeals by implication the former law with respect
to the amount to be allowed and paid for the additional
services. This rule is, however, not controlling in all cases,
as is well illustrated in the case of *United State v. Langston,*
118 U. S. 389, 6 Sup. Ct. 1185, 30 L. Ed. 164, in which the
cases cited by counsel for respondents are reviewed and dis-
tinguished. The case of *Strong v. United States* (D. C.),
34 Fed. 17, has no application here. In this connection,
however, it must not be overlooked that there are no such
constitutional restrictions upon Congress in passing, amend-
ing, and modifying existing laws as are imposed upon the
Legislature of this state. The rulings of the federal courts
upon these subjects, therefore, may or may not be authority
upon any particular question. We are of the opinion, there-
fore, that neither the law as contained in section 722 afore-
said, nor the contract which was entered into in pursuance

of the provisions of that section, were affected or modified by the general appropriation act of 1907.

It is further urged that a writ of mandate should not issue against respondents for the reason that in passing upon claims against the state they act in a *quasi* judicial capacity and must therefore be permitted to exercise the discretion usually exercised by such boards. That respondents do act in such a capacity, and that they may exercise discretionary powers in the discharge of their official duties in passing upon and in allowing or rejecting claims, does not admit of doubt. But this discretion is not one that may be arbitrarily exercised so as to prevent a claimant from seeking redress in the courts where purely questions of law are involved. In such cases even courts may be compelled to proceed to judgment, and, where the law directs what the judgment shall be in case all the facts are found or admitted, a superior court may direct an inferior one with respect to the particular judgment that shall be entered by it. The power to do this is not limited to appellate proceedings, as is illustrated in the case of *State v. Morse,* 31 Utah 213, 87 Pac. 705. In this case the essential facts entitling the relator to have his claim audited and allowed are all admitted. The questions, therefore, are purely questions of law. If the claim, therefore, is one which is admitted to be just, and is authorized by law, and there is no dispute with regard to any fact involved, and the claim is presented to the board in due form as the law requires, we know of no law nor reason why respondents, although acting in a *quasi* judicial capacity, should not be required to audit and allow the claim. This is clearly the logic of the case of *Thoreson v. State Board of Examiners,* 19 Utah 18, 57 Pac. 175. While in that case it is also held that ministerial officers may not question the validity of the law under which they are required to act (a question not involved in this case, and upon which we express no opinion), the decision in that case nevertheless also rests upon the doctrine above announced. The following authorities likewise sustain the foregoing views, namely: Merrill on Mandamus,

sec. 126; Mechem on Public Officers, sec. 968; High, Ex. Leg. Rem. (3d Ed.), secs. 101-113; *Marioneaux v. Cutler* 32 Utah 475, 91 Pac. 355.

In view of the conceded facts, there is nothing upon which the respondents can legally exercise any discretionary powers in this case, and therefore they should have audited and allowed the claim. No doubt they would have done so had they not entertained a view of the law different from the one we feel constrained to take. In such a case it is clear that the law in effect directs what the action of the board shall be, and, this being so, there is no reason why the board of examiners should not be required to comply with what it commands. There would be something lacking in our system of government or jurisprudence if under such circumstances a claimant could be defeated simply because the officer or board required to audit and allow his claim exercised some discretion in the matter. Where the duty to act is clear, and the law gives a right to obtain payment of a claim owing by the state, courts should not hesitate to enforce the right by *mandamus*. It follows, therefore, that the relator is entitled to have his claim for mileage as set forth in his petition audited and allowed by the respondents as the state board of examiners.

It is therefore ordered that a writ of mandate issue in the usual form directing the respondents as the state board of examiners of the state of Utah to audit and allow relator's claim for mileage as prayed for in the petition in the manner provided by law. The relator to recover costs.

McCARTY, C. J., and STRAUP, J., concur.