Olga WOODWORTH, Faith Nicole Woodworth and Russell Aron Woodworth, Plaintiffs and Appellants,

v.

The UTAH NATIONAL GUARD, Scott M. Matheson, David L. Wilkinson, W. Val Oveson, and the State of Utah Department of Administrative Services, Defendants and Appellees.

No. 860407.

Supreme Court of Utah.

June 8, 1990.

Frederick N. Green, Salt Lake City, for plaintiffs and appellants.

R. Paul Van Dam, Allan L. Larson, Anne Swensen, Salt Lake City, for defendants and appellees.

ZIMMERMAN, Justice:

Olga, Faith, and Russell Woodworth ("the Woodworths") appeal from the trial court's grant of summary judgment in favor of the Utah National Guard, Scott M. Matheson, David L. Wilkinson, W. Val Oveson, and the State of Utah, Department of Administrative Services (collectively referred to as "the State") on their claim for money damages as compensation for the death of Russell Reed Woodworth, the husband of Olga and the father of Faith and Russell. The Woodworths claim that they are entitled to compensation under section 39–1–59 of the Code, which provides that certain relations of those "killed ... while doing military duty" shall receive "such just and reasonable relief as the legislature shall deem proper...." Utah Code Ann. § 39–1–59 (Supp.1987) (amended 1988). The trial court denied them recovery under the statute, holding that the Utah Governmental Immunity Act barred the action and that the demand did not come within the scope of section 39–1–59 because Woodworth was not performing duties in the

service of the state. *See* Utah Code Ann. § 63–30–10(9) (1953) (amended to § 63–30–10(1)(i) (1982)); Utah Code Ann. § 39–1–59. We vacate the trial court's decision and order the case dismissed for lack of jurisdiction.

In August of 1982, Russell Reed Woodworth was killed when a military truck rolled over while he was engaged in a Utah National Guard inactive duty training exercise. The Woodworths received some limited compensation from the federal government. They sought additional compensation from the Department of the Army under the Federal Tort Claims Act, but that claim was denied. They then filed the instant claim against the State, contending that they were entitled to have the legislature appropriate funds to compensate them for Russell Woodworth's death under section 39–1–59 of the Utah Code, because he had been "killed ... while doing military duty" for the state. Section 39–1–59 provides in part:

> If any officer or enlisted man of the National Guard is wounded, injured, or otherwise disabled, or is killed or dies of wounds or injuries received while doing military duty under orders of competent authority and not as a result of his own misconduct, he, his widow, children, or any dependent relatives, *shall receive from the state such just and reasonable relief as the legislature shall deem proper....*

Utah Code Ann. § 39–1–59 (Supp.1987) (amended 1988) (emphasis added).

Under the Utah Constitution, no claim for compensation, such as that of the Woodworths, can be passed upon by the legislature unless it has first been considered by the Utah Board of Examiners. Utah Const. art. VII, § 13. Accordingly, the Woodworths' claim was referred to the board of examiners. The board denied the claim for compensation. It concluded that allowance of the claim would conflict with section 63–30–10(9) of the Utah Code, which provides governmental immunity for any injury arising out of the activities of the National Guard, and with section 39–1–51 of the Utah Code, which provides that

the state is not responsible for payments to members of the National Guard when the United States government makes payment. *See* Utah Code Ann. § 63–30–10(9) (1953) (amended to 63–30–10(1)(i) (1982)); Utah Code Ann. § 39–1–51 (1988).

The Woodworths then chose to bring an action for declaratory judgment in the district court, completely bypassing the legislature. They sought a declaration of their right to compensation under section 39–1–59. The State moved for summary judgment, asserting that the action was barred by the Utah Governmental Immunity Act and that Woodworth was not engaged in performing duties in the service of the state, but was in the service of the United States, and was thus ineligible for compensation under section 39–1–59. The district court adopted the State's arguments and granted its motion.

■ The Woodworths appeal the district court's decision. In essence, they challenge each ground relied upon by the trial court as a basis for its ruling. For the reasons discussed below, we do not reach the question of whether the decedent falls within the scope of section 39–1–59 or whether the action is barred by the Utah Governmental Immunity Act. Rather, we find that filing the declaratory judgment action was not the appropriate procedural step to take when pursuing the compensation available under section 39–1–59.

Some background is necessary. As noted, article VII, section 13 of the Utah Constitution mandates that claims such as the one made by the Woodworths be presented to the board of examiners before going to the legislature.

> Until otherwise provided by law, the Governor, Attorney General, and State Auditor shall constitute a Board of Examiners, with power to examine all such claims against the State as provided by law, and perform such other duties as provided by law; and no such claim against the State shall be passed upon by the Legislature without having been considered and acted upon by the Board of Examiners.

Utah Const. art. VII, § 13. The purpose of the requirement that the board of examiners consider any claim before it is acted upon by the legislature is to provide a safeguard against possible abuses in the disbursement of public funds. *E.g., Dean v. Rampton*, 556 P.2d 205, 207 (Utah 1976). Specifically, with respect to unliquidated claims such as tort claims or other claims for damages, the board is to "investigate and act as a fact finder and advisor to the legislature" so as to assist the legislature's resolution of such matters. *Bateman v. Board of Examiners*, 7 Utah 2d 221, 227, 322 P.2d 381, 385 (1958).

The legislature has implemented article VII, section 13 through the passage of chapter 6 of section 63 of the Code, entitled "Board of Examiners." Utah Code Ann. §§ 63–6–1 to –17 (1989). Section 63–6–11 elaborates on the procedure for presenting claims: "Any person having a claim against the state for which funds have not been provided for the payment thereof, or the settlement of which is not otherwise provided for by law, must present the same to the Board of Examiners, accompanied by a statement showing the facts constituting the claim." Utah Code Ann. § 63–6–11 (1989). Although the board must initially examine and pass upon the claim, the legislature is not bound to follow the board's advice but is free to dispose of a claim as it sees fit. *Wood v. Budge*, 13 Utah 2d 359, 362, 374 P.2d 516, 517–18 (1962).

■ Returning to the present case, the entitlement to compensation for death while on National Guard duty is entirely a creature of statute, and the procedure for obtaining the relief is similarly a creature of statute and constitution. To claim such compensation, all of the statutory and con-

stitutional requirements, both substantive and procedural, must be met. Under section 39–1–59, the claimant's entitlement is only to such relief as the legislature shall deem "just and reasonable." To obtain relief directly from the legislature, a petition must first be filed and referred to the board of examiners for review and evaluation. This much was done. The Woodworths failed, however, to take the next step; they did not then ask the legislature to determine whether relief is to be granted and, if so, how much. As noted in *Wood v. Budge*, the board's unfavorable view of the Woodworths' claim has absolutely no binding effect on the legislature when it is confronted with the same issues.[1] This statutorily mandated procedure cannot be circumvented by resort to adjudication.[2]

We hold that the Woodworths must comply with the statutory and constitutional requirements for seeking compensation for Russell Woodworth's death. Having failed to do so, they cannot properly invoke the jurisdiction of the courts to resolve the question.

The district court's decision is vacated, and the action ordered dismissed.

HALL, C.J., and HOWE, Associate C.J., concur.

DURHAM, Justice (dissenting):

I dissent. I believe that the majority has misinterpreted the relevant statutes and case law. The majority opinion orders the case dismissed based on lack of jurisdiction and therefore does not treat the merits of this appeal. Because I dissent on the jurisdictional holding, I will address the majority's analysis and deal with the issues raised by the parties on appeal.

1. In this instance, the legislature is the correct body to review the board's determination whether considered under section 39–1–59 or under section 63–6–17, which provides that one seeking review of an adverse decision of the board "may appeal from its decision to the Legislature." Utah Code Ann. § 63–6–17 (1989).

2. Even if the legislature concurs in the board's recommendation and denies the Woodworths compensation, there are other issues of no little consequence that would need to be addressed before a court undertook to adjudicate the

claim. For example, should a declaratory judgment action even be entertained given that no court could order any relief under section 39–1–59 even if it found that Russell Woodworth was covered by the terms of the statute or that the legislature might be immune from suit under section 63–30–10(1)(a) or that the separation-of-powers doctrine might preclude this court from reviewing a determination committed by statute and constitution to the legislature? *See Wood v. Budge*, 13 Utah 2d 359, 374 P.2d 516 (1962).

The trial court granted summary judgment to defendants based on its conclusions that the Utah National Guard is immune from suit, that plaintiffs' decedent was not in the service of the state when he was killed, and that plaintiffs were therefore not entitled to assert a claim under Utah Code Ann. § 39-1-59 (Supp.1987) (amended 1988).[1] Because the trial court's judgment was based only on a limited, undisputed portion of the facts, there are no findings that would bind this court to any standard stricter than correction of error.

In mid-August 1983, plaintiffs submitted a claim that was denied by the board of examiners, apparently on the grounds of governmental immunity and the decedent's "inactive duty training" status under federal supervision at the time of his accidental death. Plaintiffs then filed this action in the district court, seeking compensation under Utah Code Ann. § 39-1-59 (Supp.1987), asking the court to declare their rights under that statute, and petitioning for a writ of mandate to compel the board of examiners to grant their claim.

### I. Jurisdiction

The majority holds that filing this action was inappropriate procedurally and that jurisdiction over any further proceedings on plaintiffs' claims for relief is in the legislature only. This holding is incorrect for two reasons.

First, on appeal plaintiffs have requested only declaratory relief. While the majority's analysis of the roles to be played by the board of examiners and the legislature under Utah Constitution article VII, section 13 and Utah Code Ann. §§ 63-6-1 to -17 may be generally correct as to plaintiffs' first claim (for compensation), it does not address the claim for declaratory relief. Similarly, the concerns over immunity and separation of powers expressed by the majority in its footnote 2, *ante*, may apply to plaintiffs' third claim (for mandamus), and possibly to the first claim, but are not relevant to a claim for declaratory relief.

A claim for declaratory relief is not now (if it ever was) among the class of claims committed to the board of examiners for determination. The board of examiners has power to "examine *all* claims against the state *for the payment of ... funds....*" Utah Code Ann. § 63-6-1 (1989) (emphasis added). The statute does not grant the board of examiners jurisdiction over claims for declaratory relief.[2] Therefore, the board of examiners does not have jurisdiction over plaintiffs' claim for declaratory relief, and the provisions for appeal to the legislature do not apply.

Second, the judicial power of this state has been vested in this court by article VIII, section 1 of our constitution. The legislature cannot insulate the board of examiners' statutory interpretation from collateral judicial review, nor can it vest in itself the ultimate authority to interpret its own statutes (on appeal from the board of examiners). That result would violate the principle of separation of powers embodied in article V, section 1 of the Utah Constitution. The board of examiners made its decision on the basis of its interpretation of relevant statutes and apparently did not even consider the factual merits of the claim. Plaintiffs cannot be forced to "appeal" this decision to the legislature. Their suit for declaratory relief was the appropriate next step.

I turn now to the merits of the appeal.

---

1. The trial court's minute entry granted defendants' motion for summary judgment "for the reasons and upon the grounds therein stated." It is not clear whether the trial court actually interpreted section 39-1-59, since immunity could have disposed of the issue under the trial court's interpretation, and it did not elaborate beyond the quoted language on the reasons for its decision. Utah Rule of Civil Procedure 52(a) did not then require a statement explaining which of multiple grounds asserted were relied upon in reaching judgment.

2. Even the board's jurisdiction over monetary claims is no longer exclusive. The Utah Governmental Immunity Act, Utah Code Ann. §§ 63-30-1 to -38 (1989), was passed in 1965, sixty-seven years after the provisions governing the board of examiners were enacted. The majority does not suggest that all suits now allowed by the Immunity Act should be funneled through the board of examiners before being heard by the courts.

*II. Immunity*

In their motion for summary judgment and again on appeal, defendants argued that they are immune from suit under Utah Code Ann. § 63–30–10(1)(i) (1989), which is an express reservation of immunity from suit for an injury that "arises out of the activities of the Utah National Guard." This subsection reserves immunity from suit otherwise waived for "injury proximately caused by a negligent act or omission of [a government] employee." Utah Code Ann. § 63–30–10(1) (1989).

This argument is defective for two reasons. First, another statutory waiver applied to the facts as set out in plaintiffs' complaint. Plaintiffs alleged all the elements of negligence in their complaint (although on appeal they appear to rely only on section 39–1–59). Utah Code Ann. § 63–30–7 (1989) specifically waives governmental immunity from suit for injury resulting from negligent operation of motor vehicles—exactly the type of negligence alleged by plaintiffs. Although this court has not yet construed sections 63–30–7 and 63–30–10 together, a reading of the Governmental Immunity Act as a whole, in light of the principle that specific statutory language usually prevails over more general language within the same act (negligent operation of a motor vehicle versus negligent acts in general), suggests that defendants may not have been immune from suit in this instance, because section 63–30–7 does not include any relevant restrictions on its waiver.

Second, at least two counts of plaintiffs' complaint cannot be characterized as claims for injury resulting from exercise of a governmental function, to which immunity generally applies. *See* Utah Code Ann. § 63–30–3 (1989). Plaintiffs sought declaratory relief and/or a writ of mandate directed at the board of examiners, requesting in both of these counts an interpretation of section 39–1–59 favorable to their claim. At oral argument on appeal, plaintiffs limited their request to declaratory relief. To that extent, this is not a suit for injury; it is a suit to force the board of examiners to apply plaintiffs' view of the law to their claim.

On appeal, plaintiffs also correctly point out that in a certain sense, section 39–1–59 is an exception to governmental immunity, if such immunity were to apply in their case. The gist of this argument is that section 39–1–59 provides a specific remedial process for claims by injured members of the Utah National Guard or the families of deceased members. This process of submitting a claim to the board of examiners is totally separate from the traditional tort suit in a court of law. Because the compensation process does not involve a suit, immunity should not apply to a subsequent suit directed not at the merits of the claim itself, but rather at interpretation of the law setting up the compensation process. *See also* discussion in part I, above.

On appeal, defendants argue for the first time that the board of examiners is immune from *any* suit (as opposed to the majority opinion's jurisdictional problem) regarding its disposition of plaintiffs' claim because such a disposition is a "discretionary action." Although defendants did not argue this point below and this court is therefore not obligated to address it, I do so because of its fundamental importance. This court has passed on this question previously. In *State ex rel. Davis v. Cutler*, 34 Utah 99, 95 P. 1071 (1908), we stated the following:

It is further urged that a writ of mandate should not issue against respondents [board of examiners] for the reason that in passing upon claims against the state they act in a *quasi* judicial capacity and must therefore be permitted to exercise the discretion usually exercised by such boards. That respondents do act in such a capacity, and that they may exercise discretionary powers in the discharge of their official duties in passing upon and in allowing or rejecting claims, does not admit of doubt. But this discretion is *not* one that may be arbitrarily exercised so as to prevent a claimant from seeking redress in the courts *where purely questions of law are involved.*

34 Utah at 107, 95 P. at 1073–74 (some emphasis added). Although that case preceded the Utah Governmental Immunity Act by almost fifty years, its reasoning is sound and still applicable. In that case, the court interpreted the relevant statute differently from the board of examiners and ordered the board to allow a claim that the board had rejected based on its own interpretation of the statute. 34 Utah at 107–08, 95 P. at 1074. As noted in part I above, the judicial power of this state has been vested in this court by article VIII, section 1 of the Utah Constitution. Allowing an administrative body to insulate its interpretation of the law from review by cloaking itself with immunity would violate that grant of power, as well as offend article V, section 1. Plaintiffs basically dispute the board of examiners' interpretation of section 39–1–59. The resolution of this question of statutory interpretation by the courts is not prohibited by governmental immunity.

### III. Interpretation of Section 39–1–59

At the time plaintiffs' claim arose, section 39–1–59 provided in part:

> If any officer or enlisted man of the National Guard is wounded, injured, or otherwise disabled, or is killed or dies of wounds or injuries received while doing *military duty* under orders of competent authority and not as a result of his own misconduct, he, his widow, children, or any dependent relatives, shall receive from the state such just and reasonable relief as the legislature shall deem proper. . . .

Utah Code Ann. § 39–1–59 (Supp.1987) (emphasis added). Defendants erroneously conclude that the term "military duty" is defined by Utah Code Ann. § 39–1–37 (1988). That section provides that "[p]articipation in public ceremonies and parades and other duties in the service of the state shall be deemed military duties of the National Guard" and requires the state to pay Guard members for such services. Chapter 1 of title 39 does not have a definitions section. Section 39–1–37 plainly does not define "military duty," but merely adds to the scope of the term activities that might

not ordinarily be thought of as "military duties." If this section were a definition, it would be grossly inadequate as it fails to mention, for example: "active duty, active duty for training, inactive duty training, or state active duty," *see* Utah Code Ann. § 39–1–36(1) (1988); "military duty in case of war, insurrection, invasion, tumult, riot, or public disaster, or imminent danger of any of these," *see* Utah Code Ann. § 39–1–1(2) (1988); "active service" under martial law, *see* Utah Code Ann. § 39–1–8 (1988); "[e]ncampments of the National Guard," *see* Utah Code Ann. § 39–1–52 (1988); and "service of the United States" at the call of the President, *see* Utah Code Ann. § 39–1–9 (1988). All of these activities certainly constitute "military duty." It would be absurd to allow a claim for a Guard member injured in a parade but disallow a claim for a Guard member injured on active duty.

The relevant inquiry in this case is whether the decedent was "doing military duty." By participating in federally supervised inactive duty training, plaintiffs' decedent was "doing military duty" within the meaning of section 39–1–59 at the time he was killed.

### IV. Other Issues Raised

Plaintiffs raise two other points on appeal: that they have an unresolved contract claim against defendants based on the decedent's contract with the Utah National Guard and that any award of compensation should not be reduced by federal benefits received. As to the first point, although plaintiffs have waived on appeal any tort action permitted by Utah Code Ann. § 63–30–7 (1989), they have preserved their contract claim, and they are entitled to a declaration of whether sections 39–1–59 and 63–30–5 would allow such a claim to go forward. Because the trial court did not address the issue, I would not examine it here, but would order a remand for that purpose.

As to the argument that any compensation awarded should not be reduced by federal benefits received, section 39–1–59 provided that compensation should be

"such just and reasonable relief as the legislature shall deem proper...." Utah Code Ann. § 39–1–59 (Supp.1987). The legislature has reserved to itself discretion to determine—probably in the process of approving claims submitted to it by the board of examiners—what amount of compensation would be "just and reasonable." I would not intrude on that discretion by laying down a rule on whether compensation should reflect other benefits received.

Defendants raise one additional point. They argue that Utah Code Ann. § 39–1–51 (1988) prohibits the state from compensating plaintiffs because they have received some federal benefits. This interpretation conflicts with the legislature's discretion, and in any event, I read that section to say only that the state shall not pay salary to Utah National Guard members for services for which the United States pays such salaries, as, for example, in the case of National Guard encampments, drills, and maneuvers ordered by the President. *See* Utah Code Ann. § 39–1–9(2) (1988).

*V. Conclusion*

This court should hold that the trial court had jurisdiction to entertain plaintiffs' claim for declaratory relief. We should also hold that plaintiffs' decedent was "doing military duty" when he was killed and remand this case to the trial court to consider the legal merits, if any, of plaintiffs' contract claim, with orders to resubmit plaintiffs' claim to the board of examiners for reconsideration in light of a proper interpretation of section 39–1–59 and the scope of immunity.

STEWART, J., concurs in the dissenting opinion of DURHAM, J.