# UNITED STATES v. LANGSTON.

## APPEAL FROM THE COURT OF CLAIMS.

Submitted April 26, 1886.—Decided May 10, 1886.

A statute which fixes the annual salary of a public officer at a designated sum without limitation as to time, is not abrogated or suspended by subsequent enactments appropriating a less amount for his services for a particular fiscal year, but containing no words which expressly or impliedly modify or repeal it.

*United States* v. *Fisher,* 109 U. S. 143 ; and *United States* v. *Mitchell,* 109 U. S. 146, distinguished.

This was a petition in the Court of Claims to recover an unpaid balance of salary claimed to be due defendant in error as Minister Resident at Hayti.    The defence was that Congress, by appropriating a lesser sum, had indicated its purpose to reduce the salary.    The case is stated in the opinion of the court. Judgment below in favor of the plaintiff from which the defendant appealed.

*Mr. Attorney General* and *Mr. Assistant Attorney General Watson* for appellant.

*Mr. George A. King* for appellee.

Mr. Justice Harlan delivered the opinion of the court.

From September 28, 1877, until July 24, 1885, the claimant, John M. Langston, held the office of Minister Resident and Consul General of the United States at the Republic of Hayti. At the time he entered upon the discharge of his duties it was provided by statute as follows: "There shall be a diplomatic representative of the United States to each of the Republics of Hayti and Liberia, who shall be appointed by the President, by and with the advice and consent of the Senate, and shall be accredited as Minister Resident and Consul General. The representative at Hayti shall be entitled to a salary of $7500 a year, and the representative at Liberia to a salary not exceeding $4000 a year." Rev. Stat. § 1683. The sum of $7500 was annually appropriated for the salary of the minister to Hayti, from the creation of the office until the year 1883. 12 Stat. 421, 534; 13 Stat. 139, 424; 14 Stat. 225, 414; 15 Stat. 58, 321; 16 Stat. 219, 417; 17 Stat. 142, 471; 18 Stat. 67, 321; 19 Stat. 170, 233; 20 Stat. 92, 267; 21 Stat. 134, 339.

In the act making appropriations for the Consular and Diplomatic Service for the fiscal year ending June 30, 1879, it is provided: "That the following sums be and the same are hereby appropriated for the service of the fiscal year ending June 30, 1879, out of any money in the treasury, not otherwise appropriated, for the objects hereinafter expressed, namely: . . . For minister resident and consul general to Hayti, $7500. . . . And the salaries provided in this act for the officers within named, respectively, shall be in full for the annual salaries thereof from and after July 1, 1878; and all laws and parts of laws in conflict with the provisions of this act are hereby repealed." 20 Stat. 91, 92, 98. Similar provisions were in the Diplomatic and Consular appropriation act for the fiscal year ending June 30, 1880. 20 Stat. 267, 274. A like sum was appropriated for the fiscal years ending June 30, 1881, and June

30, 1882, but the appropriation acts for those years did not re-
peat the declaration contained in the acts for the fiscal years of
1879 and 1880, to the effect that " the salaries provided in this
act for the officers within named, respectively, shall be in full
for the annual salaries thereof," &c. 21 Stat. 133, 134, 339.

In the Diplomatic and Consular Appropriation Act of July 1,
1882, certain sums were appropriated " for the service of the
fiscal year ending June 30, 1883, out of any money in the
treasury, not otherwise appropriated, for the objects therein
expressed," one of them being " for ministers resident and
consuls general to Liberia, Hayti, Switzerland, Denmark, and
Portugal, at $5000 each, $25,000." 22 Stat. 128. The same
act provided that " hereafter the Secretary of State shall, in
the estimates of the annual expenditures of diplomatic and con-
sular service, estimate for the entire amount required for its
support, including all commercial agents, and other officers,
whether paid by fees or otherwise, specifying the compensa-
tion to be allowed or deemed advisable in each individual case."
22 Stat. 133. It is stated in the brief of the Attorney General
that the Secretary of State made a specific estimate for the salary
of the minister resident and consul general to Hayti for the
fiscal years commencing July 1, 1883 and 1884, and that that
estimate was $5000 in each report. For each of the fiscal years
ending June 30, 1884, and June 30, 1885, the appropriation
for the minister resident and consul general at Hayti was
$5000, and in the same language as that employed in reference
to that officer in the act for the fiscal year ending June 30, 1883.

In the Consular and Diplomatic Appropriation Bill of 1884,
the Committee on Appropriations in the House of Represen-
tatives reported the following paragraph as part of the bill:

" And the foregoing appropriations for Envoys Extraordi-
nary and Ministers Plenipotentiary, Ministers Resident and
Chargés d' Affaires, Ministers Resident and Consuls Generals,
Secretaries of Legation, and Interpreters, shall, after June 30,
1884, be the salary of each officer respectively, and all acts or
parts of acts inconsistent or in conflict therewith, or which al-
low a larger salary to any officer or employé herein named,
shall be, and are hereby, repealed." Congressional Record,

48th Cong. 1st Sess., part 4, p. 4194. This paragraph was omitted from the act as passed.

The claimant was paid at the rate of $7500 a year up to and including June 30, 1882, and for the balance of his term at the rate only of $5000 a year. He brought this suit to recover the difference between those amounts for the period from June 30, 1882 to July 24, 1885. His claim was sustained in the court below, and judgment was rendered in his behalf for $7666.66.

This case is distinguishable from *United States* v. *Fisher*, 109 U. S. 143, 146, and *United States* v. *Mitchell*, 109 U. S. 146, 149. In Fisher's case it was held that the clause in the Revised Statutes, fixing the salary of the chief justice and associate justice of Wyoming at $3000 per annum, was suspended by the provision in each of the appropriation acts, for the legislative, executive, and judicial expenses of the government for the fiscal years ending June 30, 1879 and 1880, which declared that the sum therein specified—among which was $2600 each to the governor, chief justice, and two associate judges of Wyoming—were appropriated "in full compensation" for the service of those years. The claim of Fisher for compensation, on the basis fixed by the Revised Statutes, was consequently rejected. This court said: "We cannot adopt the view of the appellee, unless we eliminate from the statute the words 'in full compensation,' which Congress, abandoning the long used form of the appropriation acts, has *ex industria* inserted. Our duty is to give them effect. When Congress has said that the sum appropriated shall be in full compensation of the services of the appellee, we cannot say that it shall not be in full compensation, and allow him a greater sum."

In Mitchell's case, the claim was for compensation as an Indian interpreter under §§ 2070 and 2076 of the Revised Statutes, the first one of which declared that interpreters, of a certain class, shall be paid $400 a year each, and by the second one of which it was provided that the several compensations prescribed "shall be in full of all emoluments and allowances whatsoever." During the period for which Mitchell claimed compensation, at that rate, he received pay at the rate of $300 per annum, under acts appropriating various sums for interpreters, includ-

ing seven interpreters for the Indian tribes among whom Mitchell was assigned to duty, "at $300 per annum, $2100." 19 Stat. 271. In those acts there was also a clause to this effect: "For additional pay of said interpreters, to be distributed in the discretion of the Secretary of the Interior, $6000." It was held that these acts manifested a change of policy upon the part of Congress, "namely, that instead of establishing a salary for interpreters at a fixed amount, and cutting off all other emoluments and allowances, Congress intended to reduce the salaries, and place a fund at the disposal of the Secretary of the Interior from which, at his discretion, additional emoluments and allowances might be given to the interpreters." The appropriation by those acts of a fixed sum as compensation for certain interpreters during a prescribed period, followed by the appropriation of a round sum as *additional* pay, to be distributed among them in the discretion of one of the Executive Departments, evinced the intention of Congress not to allow further compensation to such appointees during the periods specified.

The case before us does not come within the principle that controlled the determination of the other cases. The salary of the Minister to Hayti was originally fixed at the sum of $7500. Neither of the acts appropriating $5000 for his benefit, during the fiscal years in question, contains any language to the effect that such sum shall be "in full compensation" for those years; nor was there in either of them an appropriation of money "for additional pay," from which it might be inferred that Congress intended to repeal the act fixing his annual salary at $7500. Repeals by implication are not favored. It cannot be said that there is a positive repugnancy between the old and the new statutes in question. If by any reasonable construction they can be made to stand together, our duty is to give effect to the provisions of each. *Chew Heong* v. *United States,* 112 U. S. 536, 549; *State* v. *Stoll,* 17 Wall. 425, 430; *Ex parte Yerger,* 8 Wall. 85, 105; *Ex parte Crow Dog,* 109 U. S. 556, 570. The suggestion of most weight in support of the view that Congress intended to reduce the salary of the diplomatic representative at Hayti, is the improbability that that body would neglect, in any year, to appropriate the full sum to which that officer was entitled

under the law as it then existed. On the other hand, it is not probable that Congress, knowing, as we must presume it did, that that officer had, in virtue of a statute—whose object was to fix his salary—received annually a salary of $7500 from the date of the creation of his office, and after expressly declaring in the act of 1878, 20 Stat. 91, 98, that he should receive that salary from and after July 1, 1878, and again, in 1879, that he should receive the same amount from and after July 1, 1879, should, at a subsequent date, make a permanent reduction of his salary without indicating its purpose to do so, either by express words of repeal, or by such provisions as would compel the courts to say that harmony between the old and the new statute was impossible. While the case is not free from difficulty, the court is of opinion that, according to the settled rules of interpretation, a statute fixing the annual salary of a public officer at a named sum, without limitation as to time, should not be deemed abrogated or suspended by subsequent enactments which merely appropriated a less amount for the services of that officer for particular fiscal years, and which contained no words that expressly or by clear implication modified or repealed the previous law.

The judgment is                                   *Affirmed.*