**GREENLEE COUNTY, ARIZONA,**
Plaintiff,

v.

The **UNITED STATES of**
**America, Defendant.**

No. 04–1388L.

United States Court of Federal Claims.

Nov. 3, 2005.

Alan I. Saltman, Saltman & Stevens, P.C., Washington, D.C., for plaintiff.

Kelle S. Acock, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C., for defendant.

## ORDER AND OPINION

HODGES, Judge.

This is an action by plaintiff Greenlee County to recover damages measured by the amount that Congress has underfunded a program designed to reimburse plaintiff for services. The Payment in Lieu of Taxes Act is an effort by Congress to compensate local governments for the loss of tax revenue from tax-exempt property located in their jurisdictions. 31 U.S.C. §§ 6901–6907; *see also Lawrence County v. Lead–Deadwood Sch. Dist. No. 40–1,* 469 U.S. 256, 258, 105 S.Ct. 695, 83 L.Ed.2d 635 (1985) (noting the Payment in Lieu of Taxes Act "compensates local governments for the loss of tax revenues resulting from the tax-immune status of federal lands located in their jurisdictions, and for the cost of providing services related to these lands").

Greenlee claims that a formula for distributing funds pursuant to the Act requires that Congress appropriate sufficient funds to maintain these payments at the level contemplated by the formula, and that the government agency that administers the Act has a duty to request funding from Congress in amounts sufficient to satisfy the formula. Plaintiff also seeks class certification for 1,907 units of local government that have received less than the full amount authorized under the Program. Defendant filed a Motion to Dismiss for lack of subject matter jurisdiction and for failure to state a claim for which this court may grant relief. Plaintiff opposed the Motion and filed its own Motion for Summary Judgment.[1]

The statute authorizing funds for the Payment in Lieu of Taxes program states, "[n]ecessary amounts may be appropriated to the Secretary of the Interior to carry out this chapter. Amounts are available only as provided in appropriation laws." 31 U.S.C. § 6906. Plaintiff argues the limitation of the second sentence applies only to the Secretary; that is, she may not distribute more than she receives from Congress. The Government, however, was obligated to appropriate the full amount authorized by 31 U.S.C. § 6903, according to Greenlee. We cannot interpret the statute in this way. Plaintiff has not enunciated a cause of action that supports a judgment measured by annual shortages in congressional appropriations.

We must grant defendant's Motion to Dismiss for failure to state a claim. Plaintiff's Motion for Summary Judgment is denied. Plaintiff's request that we certify a class of counties in similar circumstances as Greenlee County is moot.[2]

## BACKGROUND

Plaintiff Greenlee is a county in Arizona. The United States Forest Service owns over half of the land in the county, which qualifies it for financial assistance under the Payment in Lieu of Taxes Act. *See* 31 U.S.C. § 6901(1)(A) (" 'entitlement land' means land owned by the United States Government ... that is in the National Park System or the National Forest System ....") and *id.* § 6901(2) (" 'unit of local government' means (i) a county ... that (I) is within the class or classes of such political subdivision in a State that the Secretary of the Interior, in his discretion, determines to be the principal provider or providers of governmental services within the State ....").[3]

---

1. Plaintiff filed its First Amended Complaint on September 28, 2004 and a Second Amended Complaint on January 10, 2005, omitting Count II. On January 19, 2005, Greenlee filed its opposition to the Government's Motion to Dismiss and a Motion for Summary Judgment on the remaining Counts I and III. Defendant asked that we hold plaintiff's request for Class Certification in abeyance until the court rules on the dispositive motions. We directed the Government to respond to Greenlee's Motion for Summary Judgment but suspended consideration of plaintiff's motion regarding the class action. The class action has been fully briefed.

2. Plaintiff filed a Motion to File a Supplemental Complaint, seeking to amend its damages claim to include monies for payments allegedly due under the Payment in Lieu of Taxes Act for fiscal year 2005. As a result of the court's ruling, Greenlee's Motion in this regard is moot also.

3. Defendant questioned initially whether plaintiff qualified as a "unit of local government" as contemplated by the statute. Plaintiff has since submitted documents to show that the Secretary of the Interior considers Greenlee County eligible. The Department of the Interior's Bureau of Land Management sent a letter to a Greenlee

Congress has employed various means of assisting local governments that provide services in areas of substantial federal presence. The statute at issue in this case was enacted on October 20, 1976. Payment in Lieu of Taxes Act, Pub.L. No. 94–565, 90 Stat. 2662 (codified at 31 U.S.C. § 1601).[4] The Secretary of the Interior is responsible for administering the statute. 31 U.S.C. § 6902(a)(1). The Act includes a formula for calculating the compensation due each unit of local government in a given year. *Id.* § 6903(b)(1). Congress has changed the formula from time to time over the years, most recently in 2000. Pub.L. No. 106–393, 114 Stat. 1607.

The Department of the Interior paid plaintiff $2,634,667 for fiscal years 1998 through 2004 pursuant to the Act's requirements. Greenlee asserts a claim for money damages, arguing it was due an additional $2,225,036 in funds under the statute.[5] Plaintiff asserts that Congress did not appropriate amounts necessary for the Department of the Interior to satisfy the Government's obligation under the statute for the years in question. Plaintiff also charges that the Secretary of the Interior breached an obligation to make sufficient budget requests to the Office of Management and Budget to ensure payments in accordance with the formula in the Act.

Plaintiff argues that the Government's obligation is not contingent upon the amount of the appropriation. The Government's liability for the amounts determinable by the statute, therefore, is not abrogated by Congress' failure to appropriate sufficient funds. Greenlee contends in the alternative that the Government has enjoyed benefits that plaintiff has provided, such as law enforcement and public health, search and rescue, and fire fighting services. The Secretary's failure to request funds in the amounts necessary to pay Plaintiff in accordance with the statute is a breach of an implied-in-fact contract between plaintiff and the Government. Greenlee cites the plain language of the statute and

the conduct of the parties to support its claim that an implied contract exists between the parties and defendant breached it.

The Government argues that the Act's language gives Congress discretion to fund eligible entities under the statute. The Secretary's authority to make payments to local governmental units like Greenlee is conditioned upon the amount that Congress appropriates, according to defendant. Thus, payments that deviate from the statutory formula are not actionable where the amount of the appropriation is insufficient to fund the program in the first instance. The Government argues plaintiff's request of the court to review budget requests to Congress by the Executive and plaintiff's allegations regarding the amount of funds appropriated by Congress to satisfy the statute present non-justiciable political questions. Moreover, the Government contends plaintiff has not identified a money-mandating source of recovery and the court therefore lacks jurisdiction to hear its claims.

## LEGAL STANDARDS

Congress has not appropriated funds sufficient to pay counties the amounts to which arguably they are entitled. Plaintiff urges this court to enter judgment for the difference between the amount Congress authorized for the Program and the amount it has appropriated since 1998.

This case presents issues of subject matter jurisdiction, justiciability, and the search for a "money-mandating statute." The Government argues that plaintiff's allegations concerning the legislative appropriations process raises a non-justiciable political question, and that the statute involved does not mandate payment of money nor is there a remedy based on an implied contract for defendant's alleged breach. Defendant asks that we dismiss Greenlee's claims for lack of jurisdiction and for failure to state a claim for which relief can be granted pursuant to Rules

County official on June 14, 2004, notifying the official of the fiscal year 2004 payment to Greenlee County pursuant to the Payment in Lieu of Taxes Act.

**4.** Title 31 of the United States Code was recodified in 1982 by Pub.L. No. 97–258, 96 Stat. 1031.

The recodification did not change the law substantively. The Payment in Lieu of Taxes Act now appears at 31 U.S.C. §§ 6901–6907.

**5.** Greenlee's Supplemental Complaint, which includes fiscal year 2005, seeks $2,429,248 from defendant.

12(b)(1) and 12(b)(6) of the United States Court of Federal Claims.

Rule 12(b)(1) of the United States Court of Federal Claims requires dismissal where a plaintiff has not established subject matter jurisdiction. RCFC 12(b)(1); *see also Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed.Cir.1998) ("[T]he burden of establishing jurisdiction ... must be carried by [the party asserting jurisdiction]."). The plaintiff must establish jurisdiction in this court by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988). A well pled allegation in the Complaint is sufficient to overcome a jurisdictional challenge. *Trauma Serv. Group v. United States*, 104 F.3d 1321, 1325 (Fed.Cir.1997).

Rule 12(b)(6) governs dismissal for failure to state a claim for which this court can grant relief. RCFC 12(b)(6). Dismissal is proper where plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Leider v. United States*, 301 F.3d 1290, 1295 (Fed.Cir.2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Greenlee seeks summary judgment on both its claims pursuant to Rule 56 of the United States Court of Federal Claims. RCFC 56. The court will grant summary judgment in plaintiff's favor only when there is no genuine issue of material fact and plaintiff is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether summary judgment is appropriate, the court must make all reasonable inferences against the moving party. *Id.* at 255, 106 S.Ct. 2505.

## DISCUSSION

### A. Money–Mandating Statute

*Jurisdiction of lawsuits against the United States in this court derives from the Tucker Act. 28 U.S.C. § 1491(a)(1) (allowing claims for money damages against the Government "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort"). The Act does not provide a substantive enforceable right against the Government, however. *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). To assert Tucker Act jurisdiction, a plaintiff must identify a separate, money-mandating source of recovery. *Id.*

■ A statute is money-mandating if it can "fairly be interpreted as mandating compensation by the federal Government for the damages sustained." *United States v. Mitchell*, 463 U.S. 206, 217, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (citations omitted). A money-mandating statute is "reasonably amenable to the reading that it mandates a right of recovery in damages." *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003). The Court of Appeals for the Federal Circuit stated that "while such a reading is not to be lightly inferred, a fair inference that money damages are allowable under the statute ... in question will suffice." *Fisher v. United States*, 364 F.3d 1372, 1377 (Fed. Cir.2004), *vacated by* 402 F.3d 1167 (Fed.Cir. 2005) (en banc) ("*Fisher II*") (citing *White Mountain*, 537 U.S. at 472–73, 123 S.Ct. 1126).[6]

■ The statute in question is the Payment in Lieu of Taxes Act. 31 U.S.C. §§ 6901–6907. The Act provides that "[t]he Secretary of the Interior shall make a payment for each fiscal year to each unit of general local government in which entitlement land is located as set forth in this chapter." *Id.* § 6902(a)(1). Plaintiff argues that this language renders the statute money-mandating as contemplated by the Tucker Act. The use of "shall" directs the Secretary

---

**6.** The Federal Circuit's opinion in *Fisher II* did not change the "fair inference" test for whether a Constitutional provision, a statute, or a regulation is money-mandating. Rather, the court established a single test for issues of jurisdiction and of merits. *Fisher II*, 402 F.3d at 1173. It ruled that once the determination is made by the trial court that a source is money-mandating, that determination applies to both the jurisdictional question and "the question of whether, on the merits, plaintiff has a money-mandating source on which to base his cause of action." *Id.*

to make a payment each fiscal year to eligible units of local government. Plaintiff points out that the amounts to be paid each year are determinable based on a formula contained in the Act. *See id.* § 6903(b)(1) ("A payment under section 6902 of this title is equal to the greater of [two specific amounts that are calculable according to a statutory formula].").

Defendant directs the court to a section of the statute containing the authorization of funds. It states, "[n]ecessary amounts may be appropriated to the Secretary of the Interior to carry out this chapter. Amounts are available only as provided in appropriation laws." *Id.* § 6906. Defendant contends that section 6906 does not mandate payment in accordance with the formula. It uses the word "may," as opposed to "will" or "shall." The provision also limits payments to the amount Congress provides in appropriation laws. That language expressly makes contingent any obligation to pay an eligible unit of government on the availability of appropriations, according to the Government.

We are not convinced the Payment in Lieu of Taxes Act is a money-mandating statute. It authorizes payments to local governments according to a formula, but neither the statute nor applicable regulations suggest or imply remedies for local governments that receive less than their full allotments under the formula if Congress does not appropriate sufficient funds.

Language in the case law speaking of "fair inferences" of a right to recover and readings of statutes that are "reasonably amenable" to money damages, suggest that the standards may lean slightly in a claimant's favor. However, we cannot read this statute to mandate compensation or to imply that money damages would be due in these circumstances. *Cf. Britell v. United States,* 372 F.3d 1370, 1378 (Fed.Cir.2004) (holding that mandatory language such as "will pay" or "shall pay"

creates the necessary money-mandate for Tucker Act purposes); *Mitchell v. United States,* 229 Ct.Cl. 1, 664 F.2d 265, 268 (1981) ("A clear showing that legislation directs compensation or money to be paid to the claimant is enough warrant for a suit in this court under [the Tucker Act].").

The Payment in Lieu of Taxes Act authorizes the Department of the Interior to distribute available funds according to a formula set out in the statute. Sections 6902 and 6903 address the distribution and the formula. Section 6906 limits the payments to amounts provided by appropriation laws. Congress often states that amounts are "available only as provided in appropriation laws," or they are "subject to the availability of appropriations." These phrases limit the payor's obligation to distribute funds on the availability of appropriations. Similarly, Congress' use of the phrase, "may be appropriated" or "necessary amounts may be appropriated" does not require that the amounts be appropriated, unless extenuating circumstances apply. For example, where the statutory language is unclear or ambiguous, the court may resort to legislative history to determine intent.[7] The Payment in Lieu of Taxes Act is clear, however, and requires no probing into its legislative history.

Plaintiff may be correct that the law contains an obligation of the Secretary to make payments. The obligation is expressly conditioned on availability of appropriations, however. The statute in this case does not suggest that local governments are "entitled" to payments. Entitlement programs typically contain express language of entitlement. This is not an entitlement program.[8] The Act authorizes Congress to make payments to local governmental entities but does not require Congress to give a specified amount. Section 6906 limits payments to the availability of appropriations. No mandatory lan-

---

7. *See Star–Glo Assocs., LP v. United States,* 414 F.3d 1349, 1354 (Fed.Cir.2005) (noting that "shall be available" language in an appropriation varies "based upon underlying congressional intent .... [and] can establish a cap if Congress so intends").

8. The General Accountability Office treats entitlements differently from general appropriations, defining them as "[l]egislation that requires the payment of benefits (or entitlements) to any person or unit of government that meets the eligibility requirements established by such law." GAO, *A Glossary of Terms Used in the Federal Budget Process* 57 (3d ed.1981).

guage shows that plaintiff would be entitled to receive a particular payment, even though the statute contains a formula for distributing the funds.

## B. Political Question

Defendant's political question argument is based on the exclusive power of Congress to appropriate funds. The Government argues that plaintiff's allegations infringe on the appropriations process by attempting to direct the manner in which the Payment in Lieu of Taxes Act is funded. The Government cites *Baker v. Carr* for the principles of non-justiciability that it believes to be implicated by plaintiff's arguments in this case. 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). The Supreme Court enumerated factors for courts to consider in addressing the applicability of the Political Question Doctrine. *Id.* at 217, 82 S.Ct. 691. Defendant claims that some of these factors are applicable to this case, rendering plaintiff's claims non-justiciable. Defendant argues that the courts should avoid conflict with co-equal branches of the Government regarding matters that are granted to their discretion by the Constitution or otherwise.

Plaintiff denies that this case presents a political question. It does not seek to enjoin Congress from appropriating less than the amount authorized for the Payment in Lieu of Taxes Act, or otherwise force a full appropriation. Greenlee seeks a judgment from the court for the difference between the amounts that Congress has authorized in the statute and the amounts that it has appropriated for the years in question. Plaintiff argues this case, like others before it, seeks only to have the court review a claim that Congress did not appropriate funds sufficient to meet statutory obligations. It cites two cases to support this argument, *United States v. Langston*, 118 U.S. 389, 21 Ct.Cl. 506, 6 S.Ct. 1185, 30 L.Ed. 164 (1886), and *New York Airways, Inc. v. United States*, 177 Ct.Cl. 800, 369 F.2d 743 (1966).

The issue is, may Congress reduce funds to the Payment in Lieu of Taxes Program, not by amending the enabling statute but by appropriating less money each year. We are asked to consider whether Congress had an obligation, by statute or in contract, to fund the Act fully each year. If so, is plaintiff entitled to a judgment representing the difference in the amounts that Congress authorized and the amounts that it has appropriated since 1998. This case does not present a political question.

The Political Question Doctrine may have some application to this case, as it does involve a co-equal branch of government. It happens to address congressional appropriations, but case law has shown that many cases involving contracts or entitlements are justiciable. *See, e.g., Babbitt v. Oglala Sioux Tribal Pub. Safety Dept.*, 194 F.3d 1374 (Fed. Cir.1999); *Wetsel–Oviatt Lumber Co. v. United States*, 38 Fed.Cl. 563, 570–71 (1997); *New York Airways*, 369 F.2d at 743.

## C. Implied–in–Fact Contract

Plaintiff alleges that the Payment in Lieu of Taxes Act created an implied-in-fact contract between the Government and Greenlee.[9] Greenlee notes that whether the Payment in Lieu of Taxes Act is a money-mandating statute does not affect its claim for breach of an implied contract. Defendant asserts that plaintiff did not allege the elements of an implied-in-fact contract in its Amended Complaint.[10]

The Secretary of Interior requested amounts in the budget process that were insufficient to fund payments due local governments as stated in the Act. This failure to request sufficient funds was a breach of the alleged implied contract, plaintiff believes, citing the General Accounting Office on the issue of statutory formulae: "Where allocation of funds is based on a statutory formula, the formula itself establishes the obligation to each recipient and the obligation occurs by operation of law." GAO, *Principles of Fed-*

---

9. Plaintiff stated 31 U.S.C. § 6902 "unambiguously created an obligation of the United States to pay units of local government the amounts computed pursuant to § 6903 of that statute and . . . the obligation in question was not conditioned on the availability of appropriations."

10. Plaintiff responds that its allegations were sufficient for notice pleading procedures; if not, the proper remedy is not dismissal of plaintiff's claim but direction from the court that it file another amended complaint.

*eral Appropriations Law ("GAO Redbook")* at 7–34.

Greenlee also points to cases in which the full appropriation for a government obligation was not available, yet the obligation itself remained. The plaintiff had recourse to the courts for the difference. *See, e.g., New York Airways,* 369 F.2d at 748 (holding that Congress had the power to amend an obligation but any intent to change substantive law in a subsequent appropriation must be "clearly manifest").

■ The elements of an implied-in-fact contract are the same as those required of a written contract. *See, e.g., D & N Bank v. United States,* 331 F.3d 1374, 1378 (Fed.Cir. 2003). "One must show (1) mutuality of intent to contract; (2) consideration; and (3) lack of ambiguity in offer and acceptance." *Id.* (citing *Lewis v. United States,* 70 F.3d 597, 600 (Fed.Cir.1995)). Contracts with the United States have the additional requirement that the government representative be an authorized person with actual authority to bind the Government in contract. *See Massie v. United States,* 166 F.3d 1184, 1188 (Fed.Cir.1999) ("[T]he requirements for a contract with the Government [are], specifically: mutual intent to contract including an offer and acceptance, consideration and a Government representative who had actual authority to bind the Government.") (citations omitted).

■ Plaintiff does not assert that counties negotiated with the Government to obtain payments in lieu of taxes in exchange for the counties' services. The statute does not direct the counties to use the payments in any particular manner. *See* 31 U.S.C. § 6902(a)(1) ("A unit of general local government may use the payment for any governmental purpose."); *see also Lawrence County,* 469 U.S. at 258, 105 S.Ct. 695 (citing 31 U.S.C. § 6902). The issue in *Lawrence County* was whether a state could control the manner in which payments in lieu of taxes would be used. The Supreme Court ruled that any such direction by a state was an

unconstitutional violation of the Supremacy Clause. *Id.* at 270, 105 S.Ct. 695.

Congress cannot abrogate a contractual obligation merely by declining to appropriate funds for the purpose. *See, e.g., Langston,* 118 U.S. at 389, 6 S.Ct. 1185. Most of the cases in which liability has attached to such actions by Congress in the appropriations process involve contracts or entitlements. Plaintiff has not shown that the statute at issue is an entitlement program, and it cannot show that it created an express or implied contract.[11]

Another problem with plaintiff's contract theory is the Program's apparent lack of consideration. Plaintiff argues that the county provided services in consideration of payments from the Government according to the formula in the Payment in Lieu of Taxes Act. Presumably, local governments like Greenlee were and are providing such services irrespective of the payments, however. Moreover, the program is designed to replace property taxes that local governments could collect if the property were not tax-exempt; it is not related directly to the governmental services. The parties did not negotiate their participation in the traditional context of contract law, or find a "meeting of the minds." Plaintiff has not pled the essential elements of its implied contract claim.

### ADDITIONAL ISSUES

**A. Judicial Review of the Appropriations Process**

The overriding issue in this case is, having authorized certain payment for a program, does Congress have an obligation to fund the program fully; that is, must Congress appropriate the full amount of an authorization. The answer is mostly No. Yet Congress can create obligations that may not be avoided later merely by failing to appropriate sufficient funds to cover them.

The Court of Claims addressed this issue in a case in which Congress authorized a salary of $7,500 per year for a government diplomat. *Langston,* 118 U.S. at 389, 6 S.Ct.

---

**11.** Defendant argued that the statute had to include authority for the Secretary of the Interior to enter a contract with plaintiff for plaintiff's

implied-in-fact theory to be valid. This seems uncertain but we have not addressed that issue because it is not necessary to the result.

1185. Later, Congress appropriated only $5,000 for his salary, but did not change the authorization. Congress could have amended the authorization to state that $5,000 per year was full compensation for the diplomat's services, for example. Absent such an amendment or a new statute, the court could not conclude that the Government had suspended Mr. Langston's salary. The less than full appropriation did not prevent the Court of Claims from "making up the difference" in the form of a judgment. The Court of Claims emphasized that repeals by implication are not favored. *Id.* at 1187.

The courts' function in reviewing the congressional appropriations process is limited, yet many cases hold that the effects of appropriations on contracts or entitlement programs can be proper issues for judicial review. *E.g., New York Airways* 369 F.2d at 748; *Highland Falls–Fort Montgomery Cent. Sch. Dist. v. United States,* 48 F.3d 1166 (Fed.Cir.1995).. *Highland Falls–Fort* involved Impact Aid, which is a program similar to the government benefits in dispute here. *See* Pub.L. No. 81–874, 64 Stat. 1100 (1950) (20 U.S.C. §§ 236–244 (1988 & Supp. V 1993)). Plaintiffs sued in this court for reimbursement of funds to which they believed Highland Falls was entitled because congressional appropriations had not been sufficient to meet the requirements of the statutory formula, as in this case. The trial court held that plaintiffs' entitlement to funds under the Act was not mandatory and it dismissed the case for failure to state a claim. *Id.* at 1167. Congress had appropriated funds to the Impact Aid program but not enough to cover all obligations of the program. Congressional direction in that case was more clear than in our case, but consistent nonetheless. The appeals court held that the Department of Education had no obligation or authority to transfer funds from other programs to fund the Impact Aid program at full levels. *Id.* at 1172.

Most cases in which claimants have been successful in obtaining judgments from the courts for shortfalls in amounts appropriated by Congress involved obligations that reached the level of contracts or entitlement programs. Authorizations for entitlements and contracts can be binding obligations that provide to recipients a form of legal recourse if the obligation is not met. In the case of entitlements, "[b]udget authority ... is not necessarily provided in advance, and thus entitlement legislation requires the subsequent enactment of appropriations unless the existing appropriation is permanent." GAO, *A Glossary of Terms Used in the Federal Budget Process* 57. We have held that the Payment in Lieu of Taxes Act is neither an implied contract nor an entitlement program.

### B. The Statute

The Payment in Lieu of Taxes Act passed in 1976 as Public Law 94–565 and has been amended numerous times since. It is codified at 31 U.S.C. §§ 6901–6907. The Act's purpose is to replace tax revenues for local governments that have substantial tax-exempt federal property within their boundaries. A similar federal program, known as "Impact Aid," is aimed primarily at reimbursing localities for educational and other services that they provide to federal employees and their families. *See* 20 U.S.C. §§ 236–244.

Section 6901 of the Payment in Lieu of Taxes Act contains definitions of terms that are used in the statute. Section 6902 is headed, "Authority and Eligibility." The meaning of subsection (a)(1) is a key issue in this case. That section states, "[t]he Secretary of the Interior shall make a payment for each fiscal year to each unit of general local government in which entitlement land is located as set forth in this chapter. A unit of general local government may use the payment for any governmental purpose." 31 U.S.C. § 6902(a)(1). Plaintiff argues that the mandatory language in that section, "shall make a payment" supports its contention that this is a money-mandating statute, and that plaintiff is entitled to reimbursement for lack of sufficient appropriations under this Act since 1998. The next section of importance therefore is 6906, "Authorization of appropriations."

Section 6906 is the shortest provision in the Act. It states, "[n]ecessary amounts may be appropriated to the Secretary of the Interior to carry out this chapter. Amounts are available only as provided in appropriation

laws." 31 U.S.C. § 6906. The first sentence does not contain mandatory language suggesting that plaintiff is entitled to a specific amount in any given year. The second sentence expressly limits any obligation or authority of the Secretary to make payments to the availability of appropriations. *See Star–Glo Assocs.*, 414 F.3d at 1349 (discussing the meaning of "shall be available" language in an appropriation) (citing *GAO Redbook* 6–8 (2d ed.1992)).

The parties argued the significance of miscellaneous provisions in the Act that could help to inform the main issues. Among these were 1983 amendments that barred any cause of action for underfunding the Program in previous years and permitted the use of appropriations to correct underpayments in the previous fiscal year.

### 1983 Amendments [12]

The 1983 Act eliminated liability for underfunding of the Program in previous years. Congress had appropriated ninety-two percent of the amount necessary to fund the formula fully. The 1983 legislation excluded "any cause of action or any liability for distribution of payments made prior to January 1, 1983 under [the statutory Program] ....." Plaintiff argues that this amendment shows Congress' sensitivity to its potential liability: "Congress felt the need to exculpate itself," according to plaintiff's counsel. Defendant did not respond substantively to this observation, but we could not see that the amendment disclosed legislative intent. It may have shown only that Congress did not want lawsuits over distribution of the funds. It could be argued as easily that Congress intended to confirm by the amendment that such lawsuits had never been warranted.

Section 6907(c) provides, "[a]ppropriations made for payments in lieu of taxes for a fiscal year may be used to correct underpayments in the previous fiscal year to achieve equity among all qualified recipients." The parties each argue that this language supports their position. In our view, however, the amendment merely gives the Secretary latitude to address shortages that may have occurred in the past. It does not reveal an acknowledgment by Congress that it had an obligation to fund the Program fully each year. The amendment does raise the issue of restructuring or "reprogramming." [13]

An agency reprograms funds when it moves unrestricted funds from one program to another. The Court of Appeals for the Federal Circuit ruled that an agency could not increase funding for a program beyond any statutory restrictions on appropriations for the program, whether in the "relevant appropriations act or in a separate statute ...." *Thompson v. Cherokee Nation of Oklahoma*, 334 F.3d 1075, 1084 (Fed.Cir.2003) (citing *Babbitt*, 194 F.3d at 1376).

An interesting corollary to this principle was described by the Federal Circuit in *Thompson*. *See* 334 F.3d at 1086 ("[I]n the absence of a statutory cap or other explicit statutory restriction, an agency is *required* to reprogram if doing so is necessary to meet debts or obligations. In other words, 'in some situations, the agency's discretion may rise to the level of a duty.'") (quoting *GAO Redbook* at 2–26). Plaintiff has not argued that the Secretary had sufficient unrestricted funds in the Interior Department's budget to cover any shortfalls in the Payment in Lieu of Taxes program. We have no reason to know whether this was an option according to the rules on unrestricted funds or whether such funds were available in any event.

---

12. Notwithstanding any other provision of law:

    (3) The United States shall not be subject to any cause of action or any liability for distribution of payments made prior to January 1, 1983, under the Act of October 20, 1976 (90 Stat. 2662), as amended, or regulations pursuant thereto.

    (4) A new section 6907 is added as follows:

    ...

    (c) Appropriations made for payments in lieu of taxes for a fiscal year maybe be used to correct underpayments in the previous fiscal year to achieve equity among all qualified recipients. Pub.L. No. 98–63, 97 Stat. 301 (1983).

13. The GAO defines reprogramming as moving funds from an appropriation to a purpose other than that intended by Congress when it made the appropriation. "In other words, it is the shifting of funds from one object to another within an appropriation." *GAO Redbook* at 2–25.

## C. Administrative Law

The Department of the Interior's Final Rule and related comments in the Federal Register leave little doubt that the Agency considered itself limited to the amount of the appropriation to the Secretary in a given year. *See* 43 C.F.R. Parts 44 and 1880. The Final Rule was accompanied by a series of questions under the heading, "General Information." They included questions such as: "What is the purpose of this subpart?" 43 C.F.R. § 44.10; "What are the definitions of terms used in this subpart?" *Id.* § 44.11; and "Who is eligible to receive PILT payments?" *Id.* § 44.12.

Section 44.21 asked, "[h]ow does the Department calculate payments to local governments whose jurisdictions contain entitlement lands?" The Final Rule states in response:

(a) To calculate section 6902 payments, the Department obtains the necessary data on Federal and State payments from several sources:

. . . .

(c) The Department calculates the amount of payment using:

(1) *The amount of actual appropriations;*

(2) The formula in 31 U.S.C. § 6903(b)(1) . . .; and

(3) Federal and State payments disbursed during the previous fiscal year . . . .

43 C.F.R. § 44.21 (emphasis added). Section 44.51 covers additional general procedures applicable to all payments under the Act:

(a) The minimum payment that the Department will disburse to any local government is $100.00 (one hundred dollars).

(b) *If Congress appropriates insufficient monies to provide full payment to each local government during any fiscal year, the Department will reduce proportionally all payments in that fiscal year.*

*Id.* § 44.51 (emphasis added).

The regulations provide an administrative avenue for appeal: "Any affected local government may file a protest with the Department." *Id.* § 44.55. This is accomplished by (a) submitting evidence of possible errors in data used to compute the payments; and (b) filing a protest in the following year. *Id.* § 44.56. The Rule states that appeal of a denial is to "the Interior Board of Land Appeals under 43 C.F.R. part 4." *Id.* § 44.57.

## CONCLUSION

The circumstances of this case may not fit easily within the principles discussed in *Thompson v. Cherokee Nation,* and other cases, but the statute creating the Payment in Lieu of Taxes Act clearly authorizes payments to local governments only to the extent that Congress appropriates funds sufficient to utilize the formula in section 6903. The Act requires sufficient appropriations if local governments are to receive the full amount authorized by the formula. Otherwise, regulations issued pursuant to the statute confirm that the Agency should reduce all payments accordingly.

Plaintiff has not shown that this is a case in which an aggrieved party is entitled to seek damages from the judgment fund to make up for shortages in congressional appropriations. Congress intended to retain its discretion regarding the amount of spending for this Program through the appropriations process.

Defendant's Motion to Dismiss is GRANTED. Plaintiff's Motion for Summary Judgment is DENIED. The Clerk of Court will dismiss plaintiff's Complaints. Plaintiff's motion to file a supplemental complaint is Moot and therefore DENIED. Plaintiff's motion to certify a class of local governments similarly situated is Moot and therefore DENIED. No costs.