# United States Court of Appeals for the Federal Circuit

2006-5053


GREENLEE COUNTY, ARIZONA,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.


Alan I. Saltman, Saltman & Stevens, P.C., of Washington, DC, argued for plaintiff-appellant. With him on the brief was Ruth G. Tiger. Of counsel on the brief were Barry P. Caplan and John A. Schwimmer, Sussman Shank LLP, of Portland, Oregon.

Robert J. Lundman, Attorney, Environment & Natural Resources Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Sue Ellen Wooldridge, Assistant Attorney General, and Kathryn E. Kovacs and Kelle S. Acock, Attorneys. Of counsel on the brief was Kristina Clark, Office of the Solicitor, United States Department of the Interior, of Washington, DC.

Appealed from: United States Court of Federal Claims

Senior Judge Robert H. Hodges, Jr.

# United States Court of Appeals for the Federal Circuit

2006-5053

GREENLEE COUNTY, ARIZONA,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED:  May 14, 2007

_____

Before MAYER, LOURIE, and DYK, Circuit Judges.

DYK, Circuit Judge.

Appellant Greenlee County, Arizona ("Greenlee County") appeals from a decision of the United States Court of Federal Claims dismissing its suit against the appellee United States ("government" or "United States") for failure to state a claim.  We affirm.

BACKGROUND

I

The Payment in Lieu of Taxes Act ("PILT"), 31 U.S.C. § 6901 et seq., was enacted to "compensate[] local governments for the loss of tax revenues resulting from the tax-immune status of federal lands located in their jurisdictions, and for the cost of providing services related to these lands."  Lawrence County v. Lead-Deadwood Sch.

<u>Dist. No. 40-1</u>, 469 U.S. 256, 258 (1985). Under PILT, "the Secretary of the Interior is required to make annual payments to each unit of general local government in which entitlement land is located." <u>Id.</u> (internal quotation marks omitted); <u>see also</u> 31 U.S.C. § 6902. Entitlement lands include, inter alia, land that is part of the National Forest System. 31 U.S.C. § 6901(1)(A). A "unit of general local government" is defined as a local government unit "that the Secretary of the Interior, in his discretion, determines to be the principal provider . . . of governmental services within the State" in the area of the entitlement land. 31 U.S.C. § 6901(2)(A). The amount of payment a unit of local government is entitled to under § 6902 is calculated based on the number of acres of entitlement land within its jurisdiction[1] but limited to an amount determined by a formula based on its population. <u>See</u> 31 U.S.C. § 6903.

Section 6906, the focus of the dispute in this case, provides that "[n]ecessary amounts may be appropriated to the Secretary of the Interior to carry out this chapter. Amounts are available only as provided in appropriation laws." Under the current Department of the Interior regulation, "[i]f Congress appropriates insufficient monies to provide full payment to each local government during any fiscal year, the Department will reduce proportionally all payments in that fiscal year." 43 C.F.R. § 44.51(b) (2006). The question in this case is whether the government's liability is capped by the amount appropriated by Congress.

---

[1] Under 31 U.S.C. § 6903(b)(1), the payment is the greater of two amounts determined by acreage-based formulas. One formula pays a higher rate per acreage but reduces the payment "by amounts the unit received in the prior fiscal year under a payment law." The other pays a significantly lower per acreage rate but has no reduction provision.

II

The Secretary of the Interior has determined that Greenlee County, located in eastern Arizona, is a "unit of local general government." Since the United States Forest Service owns over half of the land in the county, Greenlee County is eligible for payments under PILT and received $2,634,667 from the Department of Interior from 1998 through 2004. However, during this period, Greenlee County did not receive the full payment provided for by the statutory formula because the Department of the Interior found that Congress did not appropriate sufficient funds to fully fund payments in the full amount of the formula.

In August 2004, Greenlee County filed a suit against the United States in the Court of Federal Claims seeking $2,225,036 in unpaid amounts it was allegedly due under PILT from fiscal years 1998 through 2004 (i.e., the difference between what it received from the Department of the Interior and the full amount to which it would have been entitled under the statutory formula). Greenlee County also sought certification of a class comprising over 1900 allegedly similarly situated units of local government.

The government moved to dismiss Greenlee County's complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Court of Federal Claims ("RCFC") and for failure to state a claim upon which relief can be granted under RCFC 12(b)(6). On November 3, 2005, the Court of Federal Claims granted the government's motion to dismiss "for failure to state a claim." Greenlee County, Arizona v. United States, No. 04-1388L, slip op. at 2 (Fed. Cl. Nov. 3, 2005). The Court of Federal Claims concluded that under § 6906 the government's obligation was "expressly conditioned on [the] availability of appropriations." Id. at 7. It reasoned that the language "necessary

amounts may be appropriated" in § 6906, like the phrases "available only as provided in appropriation laws" and "subject to the availability of appropriations," "does not require that the amounts be appropriated." Id. at 6-7. The Court of Federal Claims also concluded that "[p]laintiff's request that we certify a class of counties in similar circumstances as Greenlee County is moot." Id. at 2.

Greenlee County timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

DISCUSSION

I

At the outset, we consider the government's claim that the Court of Federal Claims lacked jurisdiction because PILT is not "money-mandating." See DaimlerChrysler Corp. v. Cuno, 126 S. Ct. 1854, 1860 (2006). The Tucker Act both confers jurisdiction on the Court of Federal Claims and waives the sovereign immunity of the United States for claims for money damages founded on, inter alia, acts of Congress. See United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part). However, "[t]he Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." Fisher, 402 F.3d at 1172; see also White Mountain, 537 U.S. at 472.

The government appears to argue that whether a statute is money-mandating for purposes of Tucker Act jurisdiction depends on whether the plaintiff on the merits can make out a claim under the statute, and that the Court of Federal Claims lacked

jurisdiction here because the court properly concluded that Greenlee County was not entitled to recover under the statute. This jurisdictional argument is foreclosed by the Supreme Court's decision in White Mountain and by our decision in Fisher interpreting White Mountain.

In White Mountain, the Court explained that "a statute creates a right capable of grounding a claim within the waiver of sovereign immunity if, but only if, it can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained" and is "reasonably amenable to the reading that it mandates a right of recovery in damages." White Mountain, 537 U.S. at 472-73 (emphases added and internal quotation marks omitted). Clearly, determining whether a statute "can fairly be interpreted" to require the payment of damages or is "reasonably amenable" to a reading that mandates damages does not require a determination that the plaintiff has a claim on the merits. In fact, White Mountain itself resolved the jurisdictional issue by concluding that a 1960 statute created a fiduciary trust relationship that made "the Government . . . subject to duties as a trustee and liable in damages for breach." White Mountain, 537 U.S. at 474. The Court then remanded the case to the Court of Federal Claims to determine on the merits whether a breach occurred that would entitle the plaintiff to damages because the "existence of this general fiduciary relationship does not mean that any and every claim . . . necessarily states a proper claim for breach of the trust[,] a claim which must be fully tried in the Court of Federal Claims," White Mountain Apache Tribe v. United States, 249 F.3d 1364, 1383 (Fed. Cir. 2001) (internal quotation marks omitted), aff'd 537 U.S. at 479. Thus, the Supreme Court clearly viewed the merits of a plaintiff's case—i.e., whether the plaintiff could make out a cause

of action for damages based on a breach of the fiduciary relationship—as a separate inquiry from the jurisdictional question of whether a money-mandating source exists.

In support of its position, the government points to our discussion in <u>Fisher</u> of a "single step" that "determines both the question of whether the statute provides the predicate for [the court's] jurisdiction, and lays to rest for purposes of the case before it the question of whether the statute on its merits provides a money-mandating remedy," 402 F.3d at 1173.  However, <u>Fisher</u> considered three different grounds on which the government might file a motion to dismiss in a Tucker Act case: (1) lack of subject matter jurisdiction due to the lack of a money-mandating source; (2) failure to state a claim upon which relief can be granted due to lack of a money-mandating source; and (3) failure to state a claim upon which relief can be granted because the plaintiff is ultimately not entitled to recover money damages under the statute.  402 F.3d at 1172-73.  <u>Fisher</u> held that the first two grounds are resolved by a "single step" at the outset of the case and "the determination that the source is money-mandating shall be determinative both as to the question of the court's jurisdiction and thereafter as to the question of whether, on the merits, plaintiff has a money-mandating source on which to base his cause of action."  402 F.3d at 1172-73.  However, we also clearly noted that the third ground remains a separate inquiry, stating:

> Assuming that the Court of Federal Claims has taken jurisdiction over the cause as a result of the initial determination that plaintiff's cause rests on a money-mandating source, the <u>consequence of a ruling by the court on the merits, that plaintiff's case does not fit within the scope of the source</u>, is simply this: <u>plaintiff loses on the merits for failing to state a claim on which relief can be granted</u>.

<u>Id.</u> at 1175-76 (emphases added).

Thus, when a claim is brought under the Tucker Act, the Court of Federal Claims must first consider whether the statute or regulation is money-mandating. See Fisher, 402 F.3d at 1172. In doing so, the Court of Federal Claims asks only whether the plaintiff is within the class of plaintiffs entitled to recover under the statute if the elements of a cause of action are established.[2] If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction. See id. at 1175.

Only after this initial inquiry is completed and the Court of Federal Claims takes jurisdiction over the case does it consider the facts specific to the plaintiff's case to determine "whether on the facts [the plaintiff's] claim f[alls] within the terms of the statutes." Fisher, 402 F.3d at 1172. As we recently said in Brodowy v. United States, 482 F.3d 1370 (Fed. Cir. 2007), "[w]here plaintiffs have invoked a money-mandating statute and have made a non-frivolous assertion that they are entitled to relief under the statute, we have held that the Court of Federal Claims has subject-matter jurisdiction over the case." Id. at *7.

In this case, PILT is certainly "reasonably amenable" to a reading that it is money-mandating. Section 6902(a)(1) provides that "the Secretary of the Interior shall

---

[2]    The statute must, of course, be money-mandating as to the particular class of plaintiffs. For example, in Casa de Cambio Comdiv S.A. v. United States, 291 F.3d 1356 (Fed. Cir. 2002), we considered whether a Treasury regulation concerning time requirements for the Federal Reserve to dishonor checks presented for payment was money mandating. We held that the regulation, at best, only conferred rights on presenting banks (a category that did not include the plaintiff, the bank that received the deposit). We concluded that "the regulations could [not] be construed as being money-mandating as to [the plaintiff bank], even if they were money-mandating as to [the presenting bank]…since there is no indication that they were designed to convey rights on depositors of presenting banks." Id. at 1361.

make a payment for each fiscal year to each unit of general local government in which entitlement land is located as set forth in this chapter," and § 6903 provides a detailed mechanism for calculating these payments. "We have repeatedly recognized that the use of the word 'shall' generally makes a statute money-mandating." Agwiak v. United States, 347 F.3d 1375, 1380 (Fed. Cir. 2003). At oral argument, the government conceded that if sufficient appropriations existed to fully fund the statutory formula and the Secretary of the Interior refused to make the PILT payment to a unit of local government, the government would be breaching a money-mandating duty. While the Secretary of the Interior has some discretion in determining what constitutes a "unit of general local government," here Greenlee County has been designated as such by the Secretary. See Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005) (noting that statutory schemes that leave room for discretion can support Tucker Act jurisdiction if, inter alia, they "compel payment on satisfaction of certain conditions"). Greenlee County is thus within the class of plaintiffs that PILT authorizes to recover money damages if it can "establish the right to recovery under" PILT. Therefore Greenlee County has identified a money-mandating source sufficient to confer jurisdiction on the Court of Federal Claims.

## II

Turning now to the merits, we review de novo the grant of a motion to dismiss for failure to state a claim and ask whether "it is beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Southfork Sys., Inc. v. United States, 141 F.3d 1124, 1131 (Fed. Cir. 1998).

"It has long been established that the mere failure of Congress to appropriate funds, without further words modifying or repealing, expressly or by clear implication, the substantive law, does not in and of itself defeat a Government obligation created by statute." N.Y. Airways, Inc. v. United States, 369 F.2d 743, 748 (Ct. Cl. 1966). For example, in United States v. Langston, 118 U.S. 389 (1886), the Supreme Court held that Langston could sue to recover the amount due to him under a statute providing that "[t]he representative [of the United States] at Hayti shall be entitled to a salary of $7500 a year" even though Congress had only appropriated $5000 a year for this purpose. Id. at 390. The Court stated that an unqualified right to compensation "should not be deemed abrogated or suspended by subsequent enactments which merely appropriated a less amount…for particular fiscal years, and which contained no words that expressly or by clear implication modified or repealed the previous law." Id. at 394; see also United States v. Vulte, 233 U.S. 509, 514-15 (1914). Rather than limiting the government's obligation, a "failure [of Congress] to appropriate funds to meet statutory obligations prevents the accounting officers of the Government from making disbursements, but such rights [remain] enforceable in the Court of Claims." N.Y. Airways, 369 F.2d at 748; see also GAO, A Glossary of Terms Used in the Federal Budget Process 57 (3d ed. 1981) ("Authorization for entitlements constitute a binding obligation on the part of the Federal Government, and eligible recipients have legal recourse if the obligation is not fulfilled.").

However, in some instances the statute creating the right to compensation (or authorizing the government to contract) may restrict the government's liability or limit its contractual authority to the amount appropriated by Congress. Two questions are

raised in such cases. First, there is the question of whether the statute in fact limits the government's liability to the amount appropriated, and, second, there is the question as to what appropriations are available in a given case to satisfy this liability.

Turning to the first question—whether the government's liability is in fact restricted—the appellant admits that the language "subject to the availability of appropriations" is commonly used to restrict the government's liability to the amounts appropriated by Congress for the purpose. The Supreme Court has noted that, even in the contract context, the "subject to the availability of appropriations" language means that the government is not contractually bound except to the extent that appropriations are available. Cherokee Nation of Ok. v. Leavitt, 543 U.S. 631, 643 (2005). Similarly, we have stated that "[a]lthough [a plaintiff] may have expected to receive full funding . . . based on past experiences, the subject-to-availability-of-appropriations language . . . prevents [the plaintiff] from asserting that it was entitled to full funding as a matter of right." Babbitt v. Oglala Sioux Tribal Public Safety Dep't, 194 F.3d 1374, 1380 (Fed. Cir. 1999). Thus, it is undisputed that if PILT used the phrase "subject to the availability of appropriations," Greenlee County's right to recover would be limited to the amount appropriated.

However, PILT does not use the phrase "subject to the availability of appropriations." Instead, § 6906 states (emphasis added):

> Necessary amounts may be appropriated to the Secretary of the Interior to carry out this chapter. Amounts are available only as provided in appropriations laws.

We see little functional difference between saying that amounts are "subject to the availability of appropriations" and saying that amounts are "available only as provided in

appropriations laws," and we conclude that the language of § 6906 limits the government's liability under PILT to the amount appropriated by Congress.

Our conclusion in this case is supported by our decision in Star-Glo Associates, LP v. United States, 414 F.3d 1349 (Fed Cir. 2005), which interpreted similar language as limiting the government's liability. Congress enacted a statute that provided for payments to citrus growers for trees destroyed by a citrus disease, and provided a formula for compensation. The statute also stated that "[t]he Secretary of Agriculture shall use $58,000,000 of the funds of the Commodity Credit Corporation to carry out this section, to remain available until expended." Id. at 1351-52. The Secretary refused to make payments beyond the $58 million appropriated, and two growers sued to recover amounts that they were allegedly due under the statutory formula. Finding the statutory provision ambiguous as to whether the growers could recover amounts in excess of the $58 million, we turned to the legislative history, which noted that this provision "directs the Secretary of Agriculture to use not more than $58,000,000 for replacement of citrus trees and for compensation for losses as a result of citrus canker." H.R. Conf. Rep. No. 106-948, at 147 (2000). We concluded that this language "leaves no room to doubt that Congress intended benefits available under section 810 to be capped at $58,000,000," preventing the growers from recovering the full amount provided for by the statutory formula. Star-Glo, 414 F.3d at 1355.

In the same way that the language from the legislative history in Star-Glo directed the Secretary of Agriculture to use not more than $58,000,000, the language of the statute itself here directs the Secretary of the Interior to make available funds only as provided in appropriation laws, and therefore we believe that, as in Star-Glo, the

government's liability is capped. The fact that Star-Glo involved a specific dollar amount while the statute here refers to "amounts . . . provided in appropriation laws" is a distinction without a difference. The conclusion that PILT limits the government's liability to the amount appropriated is particularly appropriate because PILT, like the statute in Star-Glo, involves a benefits program not a contract, and "there is greater room" in benefits programs to find the government's liability limited to the amount appropriated. Star-Glo, 414 F.3d at 1355.

Greenlee County makes several additional arguments as to why § 6906 should be viewed as not capping the government's liability. We find none of them to be persuasive. First, Greenlee County argues that § 6906 is merely a direction to the Secretary that limits his ability to make payments but does not limit the government's obligation to pay the full amount provided for in the statutory formula. The statute in Star-Glo also directed to the Secretary of Agriculture to use only certain money to make the payments provided for in the statute and yet we found that this direction to the Secretary limited the government's liability.

Second, Greenlee County argues that New York Airways interpreted similar language as not imposing a cap. In that case, the statute provided that "[t]he [Civil Aeronautics] Board shall make payments" to aircraft operators who carried the mail as a subsidy to encourage the continued development of air travel "out of appropriations made to the Board for that purpose." N.Y. Airways, 369 F.2d at 745. We held that this language, designed to transfer funding responsibility from the Postmaster General to the Civil Aeronautics Board, did not cap the government's liability, and the plaintiffs could sue in the Court of Claims for subsidies not paid after the appropriated funds were

exhausted. Id. at 744-46. The language of the statute in New York Airways is markedly different than the language of § 6906. It merely required payments to be made out of appropriations made to the Board but did not limit the availability of funds to those appropriations.

Third, Greenlee County urges that § 6907(c), which states that "[a]ppropriations made for payments in lieu of taxes for a fiscal year may be used to correct underpayments in the previous fiscal year to achieve equity among all qualified recipients," shows that Congress did not intend PILT payments to be limited to the amount appropriated. However, this provision merely gives the Secretary the option of using later appropriations to correct underpayments and does not address whether the government remains liable for any underpayments that the Secretary does not correct.

Finally, Greenlee County argues that legislation from 1983 that expressly stated that "[t]he United States shall not be subject to any cause of action or any liability" for payments under PILT prior to 1983, Pub. L. No. 98-63, 97 Stat. 301, 324 (1983), shows that Congress viewed the government as liable for underfunding in other circumstances. But this legislation dealt only with a limited number of past cases and was clearly not intended to have future effect. Moreover, Congress's specific elimination of the government's liability for pre-1983 underfunding does not necessarily reflect an intent to make the government liable for post-1983 underfunding.

We conclude that the government's liability for PILT payments was limited to the amounts appropriated by Congress. As we have noted, the limit of the government's liability to amounts appropriated leaves open a second question—what appropriated

amounts are available?[3]  As the Court of Federal Claims noted, "[p]laintiff has not argued that the Secretary had sufficient unrestricted funds in the Interior Department's budget to cover any shortfalls in the Payment in Lieu of Taxes program." Greenlee County, slip op. at 13.  Therefore, this second issue is not presented by this case, and Greenlee County cannot recover.

III

Greenlee County also claims that the Court of Federal Claims erred in finding its class certification motion moot.  We disagree.  Although the parties agree that we have never directly addressed the issue, we have repeatedly found on appeal that issues related to class certification were moot in light of our resolution against the plaintiff of a motion to dismiss or for summary judgment.  See Christopher Vill., L.P. v. United States, 360 F.3d 1319, 1337-38 (Fed. Cir. 2004); Gollehon Farming v. United States, 207 F.3d 1373, 1382 (Fed. Cir. 2000), overruled on other grounds by Fisher, 402 F.3d at 1167; Greenbrier v. United States, 193 F.3d 1348, 1360 (Fed. Cir. 1999).  We see no reason to apply a different rule when it is the Court of Federal Claims that finds the issue moot.

---

[3]  The Supreme Court recently addressed this issue in Cherokee Nation in the context of a contract case and concluded that the presence of sufficient unrestricted lump-sum appropriations (not specifically appropriated for the program in issue) to meet the government's contractual obligation qualified as available appropriations. See 543 U.S. at 641; see also Oglala Sioux, 194 F.3d at 1376, 1378 (finding available appropriations limited to $95,823,000 because the $1.5 billion general appropriation act expressly limited payments for contract support costs to this amount); Highland Falls-Fort Montgomery Cent. Sch. Dist. v. United States, 48 F.3d 1166, 1171 (Fed. Cir. 1995) (holding that "money appropriated by Congress for entitlements under other sections of the [Impact Aid] Act" were not available appropriations for a program that provided aid to school districts financially burdened by federal ownership of real property).

Nothing in the Supreme Court's decision in <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156 (1974), which held that the merits of the plaintiff's claim should not be considered in ruling on class certification, <u>id.</u> at 178, requires that class certification be addressed before ruling on a motion to dismiss. The weight of authority after <u>Eisen</u> supports our conclusion that it was within the discretion of the Court of Federal Claims to find the class certification motion moot. <u>See, e.g.</u>, <u>Kehoe v. Fidelity Federal Bank & Trust</u>, 421 F.3d 1209, 1211 n.1 (11th Cir. 2005) (finding no error in grant of summary judgment without resolving class certification); <u>Curtin v. United Airlines, Inc.</u>, 275 F.3d 88, 92 (D.C. Cir. 2001) (same); <u>Schweizer v. Trans Union Corp.</u>, 136 F.3d 233, 239 (2d Cir. 1998) ("There is nothing in [Fed. R. Civ. P.] 23 [which governs class certification] which precludes the court from examining the merits of plaintiff's claims on a proper Rule 12 motion to dismiss or Rule 56 motion for summary judgment simply because such a motion precedes resolution of the issue of class certification.") (internal quotation marks omitted); Charles A. Wright, et al., <u>Federal Practice & Procedure</u> § 1785.3 (3d ed. 2005) ("The reference to 'at an early practicable time' [in Rule 23] recognizes that there may be many valid reasons justifying the deferral of the initial certification decision, including that the opposing party may prefer to win dismissal or summary judgment as to the individual plaintiffs.").[4]

---

[4] Most of the cases Greenlee County cites to support its argument involve delay of the class certification until after a trial on the merits or the question of whether a court can consider the merits when ruling on class certification. The one case cited by Greenlee County that is on point is against the weight of authority, and we decline to follow it. <u>See</u> <u>Martinez-Mendoza v. Champion Int'l Corp.</u>, 340 F.3d 1200, 1216 (11th Cir. 2003) (holding that court should have ruled on certification even after granting summary judgment for the defendant).

CONCLUSION

The Court of Federal Claims properly dismissed Greenlee County's action for failure to state a claim upon which relief can be granted. Moreover, it did not err in finding that Greenlee County's motion for class certification was moot.

<u>AFFIRMED</u>

COSTS

No costs.